159 P.3d 974 (2007)
In the Interest of J.D.C., dob: 02/21/1990.
No. 95,610.
Supreme Court of Kansas.
June 8, 2007.
*976 Joseph P. Huerter, of The Law Firm of Tenopir and Huerter, of Topeka, argued the cause, and Richard W. Benson, of the same firm, was with him on the briefs for appellant natural mother.
*977 Robert D. Hecht, district attorney, argued the cause, and Amy M. Memmer, assistant district attorney, and Phill Kline, attorney general, were with him on the brief for appellee.
The opinion of the court was delivered by BEIER, J.:
This case arises out of allegations of sexual abuse of a 14-year-old girl by her stepfather and the district court's determination that the girl was a child in need of care (CINC). We granted the natural mother's petition for review to consider whether the district judge erred in admitting hearsay evidence from the girl under K.S.A. 60-460(a), when the State did not call her in its case in chief and she was merely made available for cross-examination by her mother's lawyer.

Factual Background
Fourteen-year-old J.D.C. reported to her school counselor that her stepfather, E.D., had been sexually assaulting her for a couple of months. She reported that he fondled her breasts and put his fingers into her vagina. The school contacted the Kansas Department of Social and Rehabilitation Services (SRS), which contacted police. Detective Phillip McKay, of the Shawnee County Sheriff's office, along with another officer and Nancy Kessler, an investigator from SRS, went to the girl's residence and conducted a brief interview with J.D.C. and the family. J.D.C. stated that E.D. touched her on her breasts and vaginal area, above and below her clothing, in the morning while she was in bed. Because the stepfather lived in the home with J.D.C., McKay placed J.D.C. into emergency custody the same day over her parents' objection and despite E.D.'s offer to leave the home.
Kessler conducted a Safe Talk 3 days later at the Family Resource Center; in the Safe Talk, J.D.C. again repeated her allegations. She stated that E.D. had entered her room every weekday morning between 6:05 and 6:15 a.m., after her mother had left for work, and that he had touched her on her breasts and vaginal area, above and below her clothing. McKay monitored and videotaped the Safe Talk from a separate room.
Two days later, the State filed a CINC petition under three subsections of K.S.A. 38-1502(a) (now repealed and reenacted as K.S.A.2006 Supp. 38-2202[d]; effective January 1, 2007). It alleged J.D.C. was: (1) without adequate parental care not due solely to lack of financial means; (2) without care or control necessary for physical, mental, or emotional health; and/or (3) had been subjected to physical, mental, or emotional abuse; neglect; or sexual abuse. J.D.C.'s allegations of sexual abuse formed the factual basis for the relief sought in the petition. The petition also included information about two of J.D.C.'s brothers who, while in the sole legal custody of J.D.C.'s mother, had previously been adjudicated children in need of care under K.S.A. 38-1502(a)(1), (2), and (3) because of physical abuse by E.D.
The State sought orders for temporary and continued protection, custody, and support. It asserted that remaining in the home would be contrary to J.D.C.'s welfare and stated that an investigation was being conducted by the Shawnee County Sheriff's office.
Seven months later, Leslie Carr of SRS contacted McKay about numerous emails she had received from Brooke Grier, the foster parent with whom J.D.C. had been staying. These emails documented correspondence among J.D.C., her mother, and E.D. The gist of this correspondence was that J.D.C. needed to recant her story about being assaulted by E.D. so that she could come home.
The State then filed an amended CINC petition, adding the information regarding the "inappropriate emails" between E.D. and J.D.C. The amended petition also noted that J.D.C. had told her foster parent that E.D. used to come into her bedroom and watch her and stroke her hair. The State alleged that remaining in the home would be contrary to J.D.C.'s welfare, because the reported sexual abuse was at the hands of her stepfather, who was still residing in the home; that there was pressure on J.D.C. to recant her story, which was under investigation; and that the email communications violated a prohibition on unsupervised contact.

*978 Trial to the District Court

At trial, J.D.C.'s mother testified that she did not believe the allegations of sexual abuse. She said J.D.C. had admitted the allegations were false approximately 5 months after J.D.C. was removed from the home. J.D.C.'s mother also testified that she had been married to E.D. for 13 years. She conceded that two of J.D.C.'s brothers had previously been adjudicated children in need of care because of physical abuse by E.D.
McKay testified about J.D.C.'s statements at the in-home interview and during the Safe Talk. He also responded to questions concerning the emails between J.D.C. and E.D. The emails were admitted into evidence but are not in the record on appeal.
Kessler testified that SRS had received a sexual abuse report and that she had been assigned to investigate and make a safety assessment. She described the Safe Talk, including McKay's monitoring and videotaping from a separate room. The videotape was admitted and played before the district court; it is not included in the record on appeal.
Brenda Sue Holaday, the head counselor at Washburn Rural High School who had initial contact with J.D.C., testified about J.D.C.'s allegations. Holaday said she contacted Dr. Wayne Peterson, the school psychologist, who contacted J.D.C.'s mother at work and interviewed her when she came to the school.
Peterson testified about his interview of J.D.C.'s mother in J.D.C.'s presence. He testified that J.D.C.'s mother was "upset" but was "being patient and not contradicting anything or discounting what was said."
Grier testified that J.D.C.'s social worker, Felicia Livingston, asked Grier about an email account J.D.C. maintained under Grier's main account. Grier then discovered emails between J.D.C. and her parents, printed those emails, and delivered them to SRS.
Finally, the State called E.D. to the stand. After acknowledging that he was unrepresented, and after being advised of his right against self-incrimination under the Fifth Amendment to the United States Constitution, E.D. admitted that he and J.D.C.'s mother had corresponded with J.D.C. via email after J.D.C. was removed from their home. He confirmed that, in an email dated April 4, 2005, he told J.D.C.: "The reason they don't want your mom to visit or talk to you on the phone right now is because [Livingston, the social worker] thinks that your mom and Pastor Bruno talk[ed] you into your change of heart about your Dad. SRS doesn't want you to do the right thing. They want you to hate your Mom and Dad so that they can destroy him (Daddy)." The email also told J.D.C. that her stepfather's future was in her hands and said: "Dr. Lion will be asking you the same thing, just tell them the same story as you did at the family meeting."
When the State implied that E.D. and J.D.C.'s mother were pressuring J.D.C. to recant, E.D. maintained that he had not asked J.D.C. to change her story or to tell a particular story, but had supported her in telling the truth about what happened. He said he left it to "the good lord and [J.D.C. to] decide" what that story would be. He also testified that he did not realize he was not to have contact with J.D.C.; that J.D.C. had initiated the email contact; and that J.D.C. wanted E.D. to adopt her "after this [was] over with."
The State rested its case without calling J.D.C. to testify. J.D.C.'s guardian ad litem called E.D. to testify in response to one clarification question, and then rested his case as well.
Throughout the State's case, and at the close of the guardian ad litem's' case, counsel for J.D.C.'s mother made repeated hearsay objections to testimony concerning J.D.C.'s allegations of sexual abuse  including her statements made at school, at the in-home interview, in the Safe Talk, and in the emails. Counsel argued that such testimonial hearsay violated the Confrontation Clause, as discussed in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); that it did not fit any recognized hearsay exception; and that the State was shirking its evidentiary burden. The district judge noted a continuing objection on these grounds but overruled it. The judge stated *979 that J.D.C., who was present in the courthouse during the trial, was available and subject to call, citing K.S.A. 60-460(a). He also stated that he considered the Safe Talk to be J.D.C.'s direct testimony and that counsel for J.D.C.'s mother could call J.D.C. to cross-examine concerning her hearsay statements admitted into evidence through the videotape and testimony of State witnesses. After conferring with his client, counsel for J.D.C.'s mother declined the judge's offer.
Ultimately, as part of his closing and in later written filings, counsel for J.D.C.'s mother moved to dismiss, primarily arguing that the admission of the hearsay statements and the State's failure to put J.D.C. on the stand were fatal to the case. In his memorandum decision, the district judge denied the motion to dismiss, noting that "[t]he court offered counsel . . . the opportunity to place [J.D.C.] on the stand and cross-examine reference the [S]afe [T]alk," but J.D.C.'s mother and counsel declined the opportunity. The court ruled that the Safe Talk interview was admissible pursuant to K.S.A. 60-460(a), and the State produced "clear, convincing, and unrefuted evidence" that J.D.C. was a child in need of care pursuant to K.S.A. 38-1502(a)(1), (2), (3).

The Court of Appeals Decision
A panel of the Court of Appeals affirmed the district court's ruling, holding that the Confrontation Clause of the Sixth Amendment to the United States Constitution did not apply in CINC proceedings. In addition, J.D.C.'s out-of-court statements in the videotape fell within the exception to the rule against hearsay for previous statements of a person present under K.S.A. 60-460(c); and admission of the videotaped statements did not violate due process. 35 Kan.App.2d at 914-16, 136 P.3d 950.
The panel concluded, however, that the district court erred in admitting testimony of "the counselor, the SRS investigator, and the sheriff's detective." 35 Kan.App.2d at 915, 136 P.3d 950. It relied on its view that the district judge had implicitly found J.D.C. unavailable for cross-examination regarding these statements. "[T]he trial court only stated it would allow Mother to cross-examine J.D.C. as to the videotaped interview. Thus, without specifically saying so, the trial court in essence found J.D.C. unavailable to be cross-examined as to what she told these three witnesses." 35 Kan.App.2d at 915, 136 P.3d 950.
The panel then turned to the question of whether the error was harmless. The panel believed the outcome on that question rested on the sufficiency of evidence contained in the properly admitted videotape; and, because the videotape was not included in the record on appeal, it held that J.D.C.'s mother had failed to support her claim of error. 35 Kan.App.2d at 915-16, 136 P.3d 950.
The panel also endorsed the district court's conclusion that the previous declaration of two of J.D.C.'s brothers as children in need of care gave rise to a presumption under K.S.A. 38-1585(a)(3) (now repealed and reenacted as K.S.A.2006 Supp. 38-2271[a][3]; effective January 1, 2007); that their mother was unfit. This, the panel ruled, "would arguably be evidence to support a finding that J.D.C. is a CINC." 35 Kan.App.2d at 916, 136 P.3d 950.

Application and Constitutionality of K.S.A. 60-460(a)
As a preliminary matter, we note that the State has abandoned its argument that J.D.C.'s hearsay statements were admissible under K.S.A. 60-460(dd). We therefore evaluate only the applicability of K.S.A. 60-460(a) and any constitutional implications.
Generally, all relevant evidence is admissible. Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(b). There can be no legitimate question that J.D.C.'s statements about sexual abuse by her stepfather were relevant in this CINC proceeding.
Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. Mooney v. City of Overland Park, 283 Kan. 617, 620, 153 P.3d 1252 (2007). An appellate court's review of questions *980 of law is unlimited. Fidelity Bank v. King, 281 Kan. 1278, Syl. ¶ 1, 136 P.3d 465 (2006). We also have recognized that the appropriate exercise of judicial discretion varies, depending on the character of the question presented for determination. A district court's decision is protected if reasonable persons could differ upon the propriety of the decision, as long as the discretionary decision is made within and takes into account the applicable legal standards. If, among other things, a district court's decision goes outside the legal framework or fails to properly consider statutory limitations, it constitutes an abuse of discretion. Dragon v. Vanguard Industries, Inc., 277 Kan. 776, 779, 89 P.3d 908 (2004).
In this case, we are required to determine whether the district judge's evidentiary ruling was contrary to the governing statute or to constitutional protections. These issues raise questions of law reviewable de novo. See Griffin v. Suzuki Motor Corp., 280 Kan. 447, 451, 124 P.3d 57 (2005) (whether admission of evidence violated provision of Kansas Products Liability Act reviewed de novo); State v. Carter, 278 Kan. 74, 77-78, 91 P.3d 1162 (2004) (whether admission of evidence violated Confrontation Clause reviewed de novo); In re Habeas Corpus Application of Pierpoint, 271 Kan. 620, 627, 24 P.3d 128 (2001) (whether admission of evidence violated due process reviewed de novo).
K.S.A. 60-460(a) permits the admission of hearsay if it is "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."
Our review of the trial transcript reveals that the district judge found J.D.C. available under K.S.A. 60-460(a) for purposes of the entire proceeding; this determination was not limited to her statements recorded on the Safe Talk videotape. In our view, the Court of Appeals panel erred by relying on a single, less inclusive statement by the district judge to infer otherwise.
We also note that it would have been impossible for the district judge to find J.D.C. unavailable, as that term is defined in K.S.A. 60-459(g). "Unavailable as a witness" means the person is: (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant; (2) disqualified from testifying to the matter; (3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness; (4) absent beyond the jurisdiction of the court to compel appearance by its process; or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts. K.S.A. 60-459(g). J.D.C. was none of these. Rather, she was a party to the action, and her whereabouts were known. She was in the courthouse throughout the trial and subject to call by either party.
J.D.C.'s mother asserts that mere availability, however, is not enough to satisfy the statutory requirements that a declarant such as J.D.C. be "present at the hearing" and "available for cross-examination with respect to the [hearsay] statements and [their] subject matter." In addition, she argues, the statute requires J.D.C. to have testified on direct examination.
When the language of a statute is clear and unambiguous, there is no need to look beyond it to discern legislative intent, our interpretative touchstone. See Perry v. Board of Franklin County Comm'rs, 281 Kan. 801, Syl. ¶ 5, 132 P.3d 1279 (2006); State v. Robinson, 281 Kan. 538, 539, 132 P.3d 934 (2006). The language of K.S.A. 60-460(a) is clear and unambiguous. It simply does not say that J.D.C. must have testified on direct examination in order to be "present" or "available for cross-examination" about her hearsay statements. Speaking strictly statutorily, it was enough that J.D.C. was in the courthouse and available to be called to the witness stand. Her hearsay statements and their subject matter could have been fully explored if her mother's counsel had accepted the district judge's invitation to call J.D.C. and conduct her examination as a hostile witness. Indeed, an advocate *981 in that position would have been free of the usual limitation imposed by the scope of direct testimony, a limitation that can hamper efforts to attack witness credibility and reliability.
J.D.C.'s mother next challenges the application of K.S.A. 60-460(a) in this case on constitutional grounds. She cites several Kansas criminal cases for the proposition that the Confrontation Clause of the Sixth Amendment requires an available declarant to be called by the State in a CINC proceeding. See State v. Speed, 265 Kan. 26, 41, 961 P.2d 13 (1998); State v. Fisher, 222 Kan. 76, 563 P.2d 1012 (1977); City of Colby v. Cranston, 27 Kan.App.2d 530, 537, 7 P.3d 300, rev. denied 269 Kan. 931 (2000). She further buttresses her argument with citations to several United States Supreme Court cases. See Crawford v. Washington, 541 U.S. 36, 43, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (abrogating Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 [1980]) (out-of-court testimonial statements inadmissible under Confrontation Clause, unless witnesses unavailable, defendant had prior opportunity to cross-examine); California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (although hearsay rules, Confrontation Clause protect similar values, statement may fall within recognized hearsay exception but nonetheless violate Confrontation Clause); see also Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (certain hearsay statements may not implicate Confrontation Clause; court must still consider whether admissible under an exception to hearsay); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (although rule excluding hearsay, Confrontation Clause protect similar values, they often differ in application, substance; higher standard of admissibility required under Confrontation Clause).
J.D.C.'s mother is correct that we stated in Fisher: "For reasons of policy and fairness, and to ensure the right of confrontation is not abridged, we hold that in a criminal proceeding the declarant must testify at trial before hearsay evidence may be admitted under K.S.A. 60-460(a)." 222 Kan. at 82, 563 P.2d 1012. We have since modified this Fisher rule slightly, holding that a declarant's hearsay statement may be admitted into evidence under K.S.A. 60-460(a) either before or after the declarant testifies, see State v. Davis, 236 Kan. 538, 541, 694 P.2d 418 (1985), but we have nevertheless consistently applied it in criminal cases. See, e.g., State v. Hernandez, ___ Kan. ___, 159 P.3d 950, 2007 WL 1649840 (2007); State v. Wise, 237 Kan. 117, 120, 697 P.2d 1295 (1985); State v. Staab, 230 Kan. 329, 338, 635 P.2d 257 (1981). She urges us to extend application of the modified Fisher rule to CINC cases in the civil arena.
We decline to do so. The Sixth Amendment's Confrontation Clause on which the Fisher rule relies is explicitly limited. It provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." (Emphasis added.) U.S. Const., amend. VI. This Sixth Amendment guarantee was made applicable to the States through the Fourteenth Amendment to the United States Constitution in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). And these amendments grant no greater protection in this respect than does the Kansas Constitution Bill of Rights, § 10, which provides: "`In all prosecutions, the accused shall be allowed to . . . meet the witness face to face. . . .'" (Emphasis added.) Fisher, 222 Kan. at 80, 563 P.2d 1012; see M.L.B. v. S.L.J., 519 U.S. 102, 139-40, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (Thomas, J., dissenting); Dutton, 400 U.S. at 97 n. 4, 91 S.Ct. 210 (Harlan, J., concurring) (Confrontation Clause applies only to criminal prosecutions; Court has never equated the hearsay rule and the Confrontation Clause); Hannah v. Larche, 363 U.S. 420, 440 n. 16, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960) (Confrontation Clause generally does not apply in administrative, civil context); see also United States v. Zucker, 161 U.S. 475, 481, 16 S.Ct. 641, 40 L.Ed. 777 (1896) (Confrontation Clause applies to criminal cases; defendants cannot demand, in civil action, to confront witnesses against them). The Confrontation Clause granted J.D.C.'s mother no more than K.S.A. 60-460(a) provided in this proceeding.
*982 J.D.C.'s mother also argues that her constitutional right to due process of law was violated by the district judge's refusal to force the State to call J.D.C. to testify on direct examination. The Court of Appeals panel appeared to read this argument narrowly, rejecting it by relying again on its conclusion that J.D.C.'s mother had no right to confrontation under the Sixth Amendment. 35 Kan.App.2d at 913-16, 136 P.3d 950. We regard this rationale as insufficient.
Any right that a civil litigant can claim to confrontation and cross-examination is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments. See Willner v. Committee on Character, 373 U.S. 96, 103, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) ("procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood"). The same is protected by the Kansas Constitution Bill of Rights, § 18.
The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Winston v. Kansas Dept. of SRS, 274 Kan. 396, 409, 49 P.3d 1274 (2002), cert. denied 537 U.S. 1088, 123 S.Ct. 700, 154 L.Ed.2d 632 (2002). In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due. 274 Kan. at 409, 49 P.3d 1274.
A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Sheppard v. Sheppard, 230 Kan. 146, 152, 630 P.2d 1121 (1981), cert. denied 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982). That right, however, is not absolute. The welfare of children is a matter of State concern. Sheppard, 230 Kan. 146, Syl. ¶ 2, 630 P.2d 1121. Before a parent can be deprived of her right to the custody, care, and control of her child, he or she is entitled to due process of law. 230 Kan. at 152-54, 630 P.2d 1121.
A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. Mathews, 424 U.S. at 335, 96 S.Ct. 893; Winston, 274 Kan. at 409-10, 49 P.3d 1274.
Confrontation and cross-examination are not rights universally applicable to civil proceedings. Vitek v. Jones, 445 U.S. 480, 495-96, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (due process entitled inmate facing involuntary transfer to mental hospital limited right to call witnesses, to confront and cross-examine); Wolff v. McDonnell, 418 U.S. 539, 567-68, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (rights of cross-examination and confrontation not universally applicable to prison disciplinary hearings); see Haddock v. U.S.D. No. 462, 233 Kan. 66, Syl. ¶ 8, 661 P.2d 368 (1983) (due process required evidence used to prove school board's case for nonrenewal of tenured teacher be disclosed to teacher to afford opportunity for cross-examination); compare In re Petition of City of Overland Park for Annexation of Land, 241 Kan. 365, 371, 736 P.2d 923 (1987) (no right to cross-examination in contested annexation proceeding before City Board); see also United States v. Alisal Water Corp., 431 F.3d 643, 658 (9th Cir.2005) ("In the context of a civil suit `cross-examination is not, in every instance, a sine qua non of due process. It all depends on the situation.'")
However, the trend in other jurisdictions is to require more, rather than less, due process for a parent whose fundamental right to care, custody, and control of a child is challenged. *983 This due process includes an opportunity for live cross-examination.
For example, in New Jersey DYFS v. Z.P.R., 351 N.J.Super. 427, 798 A.2d 673 (2002), the court reviewed a trial court's dismissal of the state agency's petition to take custody of a child, determining that the child's hearsay statements alleging abuse were not sufficiently corroborated. The court held that, pursuant to statute, previous statements made by the child relating to any allegations of abuse or neglect are admissible; yet any such statement, if uncorroborated, is insufficient to make a fact finding of abuse or neglect. 351 N.J.Super. at 434-36, 798 A.2d 673. The court noted:
"`The most effective types of corroboration in such cases, of course, are eyewitness testimony, a confession or admissions by the accused, and medical or scientific testimony documenting abuse. In most cases of child sexual abuse, however, there is no direct physical or testimonial evidence. The child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent offenses such as petting, exhibitionism, fondling and oral copulation. Physical corroboration may also be unavailable because most children do not resist, either out of ignorance or out of respect for authority. Consequently, in order to give any real effect to the child victim hearsay statute, the corroboration requirement must reasonably be held to include indirect evidence of abuse. Such evidence has included a child victim's [abnormal and sexualized behavior,] precocious knowledge of sexual activity, a semen stain on a child's blanket, a child's nightmares and psychological evidence.'" 351 N.J.Super. at 436, 798 A.2d 673 (quoting State v. Swan, 114 Wash.2d 613, 622-23, 790 P.2d 610 [1990], cert. denied 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 [1992]).
We see similar holdings from other sister courts. See Care and Protection of Inga, 36 Mass.App. 660, 634 N.E.2d 591 (1994) (judge's findings supporting decision to commit children to permanent custody of Department of Social Services did not provide clear and convincing evidence that children in need of care, protection; hearsay allegations of sexual abuse made by daughter, contained in report made after physician noted possible physical abuse of son, could not be considered where neither daughter nor author of report testified); Dependency of S.S., 61 Wash.App. 488, 814 P.2d 204 (1991) (5-year-old's hearsay statements about father's sexual contact admissible once court found sufficient indicia of reliability); Matter of Cindy B., 122 Misc.2d 395, 471 N.Y.S.2d 193 (1983) (uncorroborated hearsay statement by oldest daughter, with whom father admitted sexual intercourse, could not support finding based on uncorroborated hearsay statement of allegedly abused second daughter; evidence insufficient to support finding any child other than oldest daughter neglected); Matter of Hawkins, 76 Misc.2d 738, 351 N.Y.S.2d 574 (1974) (girl's statement to social worker about father's sexual contact corroborated by brother, mother; girl adjudged abused; boy adjudged neglected; although statute dispenses with corroboration, Fifth Amendment does not; corroboration ample); In re Y.B., 143 Vt. 344, 466 A.2d 1167 (1983) (anonymous hearsay regarding parent unfitness admissible at disposition hearing, inadmissible at hearing to determine whether 7-year-old child in need of care, supervision; hearsay could not be used as factual basis for determining parent unfitness); In re Lee, 126 Vt. 156, 224 A.2d 917 (1966) (information received by court from outside sources before hearing, report of social worker made 5 months previously not for consideration for any purpose in child dependency case; parties have right to be faced by witnesses who give evidence in court, must have opportunity to cross-examine); see also In re Ty.B, 878 A.2d 1255 (D.C.2005) (in neglect petition, testimony of four maternal aunts regarding statements made to each by mother about violence allegedly inflicted by father inadmissible); New Jersey DYFS v. J.Y., 352 N.J.Super. 245, 800 A.2d 132 (2002) (due to the fundamental right involved, court's authority to remove children from the custody of parents must be exercised with scrupulous adherence to procedural safeguards; "perfunctory manner in which the judge treated the fact-finding process undermined its importance *984 and relegated it to a mere technicality"; proceeding included "none of the elements ordinarily deemed indispensable to an adjudicative hearing," violated rules of trial practice, and inhibited appellate review); compare Matter of T.W., 332 Mont. 454, 139 P.3d 810 (2006) (testimony from police officer concerning statements made by mother about domestic incident between her and child's father admissible under excited utterance hearsay exception in hearing to adjudicate child as a youth in need of care; Crawford, 541 U.S. 36, 124 S.Ct. 1354, not applicable).
We certainly understand that requiring an opportunity to confront an available hearsay declarant in a CINC case decreases the risk of erroneous deprivation of the parent's fundamental right to care, custody, and control of his or her child, particularly when the declarant's hearsay statements are the sole basis for the judge's ultimate ruling. Furthermore, we agree with J.D.C.'s mother that the additional fiscal and administrative burdens that providing an opportunity for such confrontation places on the State are minimal. We must, however, also continue to bear in mind the State's interest in preserving the well-being of the child. Assuming without deciding that the balance of these considerations leads to the conclusion that the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Kansas Constitution Bill of Rights, § 18, required an opportunity for confrontation of J.D.C. in this case, we then must decide whether the opportunity offered was sufficient.
We hold that it was. As discussed above, the district judge was prepared to summon J.D.C. to the courtroom for whatever cross-examination her mother's counsel saw fit to pursue. This had the potential to be broader and more searching than a cross-examination limited to the scope of a preceding direct examination. Nevertheless, after consultation with his client, counsel declined the judge's invitation. While this was adequate to preserve J.D.C.'s mother's legal objection to proceeding in the suggested fashion, it did little to protect her case. She waived her opportunity to do more  to confront her daughter in court and challenge her accusations face-to-face.

Sufficiency of the Evidence
Finally, J.D.C.'s mother challenges the sufficiency of the evidence supporting the district court's decision. On appeal, we examine whether there was substantial competent evidence to support the district court's finding. "Substantial evidence" is such legal and relevant evidence as a reasonable person would accept as sufficient to support a conclusion. In re S.M.Q., 247 Kan. 231, 234, 796 P.2d 543 (1990). An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. 247 Kan. at 234, 796 P.2d 543. In a CINC case, we must, however, be able to discern that the State's evidence was clear and convincing. K.S.A. 38-1555 (now repealed and reenacted as K.S.A.2006 Supp. 38-2250; effective January 1, 2007). We conduct our assessment, viewing the evidence in the light most favorable to the State. 247 Kan. at 234, 796 P.2d 543.
Because we have concluded that due process was satisfied and that J.D.C.'s hearsay statements were admissible without limitation under K.S.A. 60-460(a), we have no hesitation in reaching the additional conclusion that the evidence was sufficient to demonstrate J.D.C. was a child in need of care. Although it would have been helpful to have the videotape of the Safe Talk in the record on appeal, the testimony of others regarding J.D.C.'s allegations about E.D. met the clear and convincing standard. We do not agree with the Court of Appeals panel that the earlier proceedings regarding J.D.C.'s two brothers have any bearing on this question. While these adjudications might have supported a presumption of unfitness under K.S.A. 38-1585 in a termination proceeding, they do not, pursuant to statute or otherwise, create any presumption in a CINC proceeding under K.S.A. 38-1502(a). Further, we note our Court of Appeals has previously held, relying on United States Supreme Court precedent, that presuming unfitness rather than requiring the State to bear the burden of proving it violates due process. See In re J.L., 20 Kan.App.2d 665, Syl. ¶ 6, *985 891 P.2d 1125, rev. denied 257 Kan. 1092 (1995).
Affirmed.
JOHNSON, J., not participating.
LOCKETT, J., Retired, assigned.[1]
NOTES
[1] REPORTER'S NOTE: Justice Tyler C. Lockett, Retired, was appointed to hear case No. 95,610 vice Justice Johnson pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.