NOT DESIGNATED FOR PUBLICATION

No. 123,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT LOWELL LAWRENCE WARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed September 24, 2021.
Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and CLINE, JJ.

PER CURIAM: Robert Lowell Lawrence Ward appeals the district court's denial of his motion for a new trial and its refusal to hear additional claims not raised in that motion. After a jury convicted Ward of the four lesser included charges out of eight charged counts, his attorney moved for a new trial, claiming Ward's appearance in front of the jury while wearing a jail bracelet violated his right to a fair trial. At the hearing on this motion, Ward tried to raise other issues involving the effectiveness of his attorney's representation. The court sustained the State's objection to consideration of issues outside of the motion, to which the State had no notice or opportunity to respond. It also

1

explained to Ward that he could raise these other issues under the procedure outlined in K.S.A. 60-1507. We find no error by the district court and affirm.

FACTS

The State charged Ward with eight counts stemming from four separate domestic violence incidents involving his then girlfriend, S.C. S.C. detailed these incidents to the jury at the trial. One of S.C.'s friends testified about S.C.'s injuries after one of the incidents, as well as how he drove S.C. to the hospital for treatment. S.C.'s primary care doctor also testified about S.C.'s injuries. Ward testified in his own defense, denying some of the accusations and equivocating on others. The jury found Ward guilty on the four lesser included charges and not guilty on the other charges.

On March 13, 2020, Ward's attorney, Rand Simmons, moved for a new trial. He argued Ward's appearance in front of the jury while wearing a yellow jail bracelet denied Ward the presumption of innocence which is part of his constitutional right to a fair trial, citing *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), and *State v. Hall*, 220 Kan. 712, 556 P.2d 413 (1976). Simmons filed several notices of hearing, rescheduling the hearing on this motion.

On May 11, 2020, Simmons moved to withdraw, stating "defendant has asked counsel to request new counsel on his behalf." Simmons did not file a notice of hearing for this motion.

On May 12, 2020, the district court clerk filed several e-mails from Ward. Ward couched most of these e-mails as pro se motions, in which he set forth ineffective assistance of counsel claims against Simmons. Ward alleged that Simmons: (1) knowingly withheld crucial evidence—Verizon cell phone records that, according to him, would have shown that the victim, the victim's father, and another witness all lied under

2

oath at trial; (2) refused to file a K.S.A. 22-3402 motion in the case as ordered by Judge Lee Fowler; and (3) wrote at the top of Ward's written objection to the State's Rule 170 journal entry for December 10, 2019, that there was no objection to two late Rule 170 forms being electronically filed during the jury trial. See Kansas Supreme Court Rule 170 (2021 Kan. S. Ct. R. 232). In another e-mail, dated May 7, 2020, and addressed to Simmons, Ward stated Simmons was fired. Ward also stated in this e-mail that he objected to being sentenced over Zoom, instead requesting to appear in person. The record does not reveal whether the State or the district court judge received copies of any of these e-mails. The only e-mail apparently sent to Simmons was the e-mail dated May 7, 2020.

On May 25, 2020, Simmons filed a motion for dispositional or durational departure from the presumptive sentence in Ward's case. The next day, he filed a notice of hearing for a "Motion for New Trial/Sentencing," setting the hearing on May 28, 2020.

On May 26, 2020, the State responded to Ward's motion for a new trial. The State agued Ward waived his right to be tried without the bracelet by failing to object to it during trial. It also argued Ward failed to establish he was prejudiced by the unobtrusive bracelet since he presented no evidence any juror noticed it and the jury acquitted him on four of the eight counts.

On May 28, 2020, the district court held a hearing over Zoom. At the outset, Simmons told the judge he understood Ward objected to holding the hearing this way. The judge asked Ward whether he consented to proceed by Zoom. Ward said he would rather proceed in person. The judge started to ask Ward another question, but Ward continued to talk over the judge, using profanity. Eventually, the judge put Ward on mute so he could speak and Ward could hear it. The judge said he did not think it was possible to proceed by video conference given how Ward was acting. The judge then tried to

schedule an in-person hearing over the next weeks, then noted Ward had left the Zoom conference.

Simmons then asked the district court to address his motion to withdraw, so Ward could have new counsel for the upcoming hearing. Simmons said he and Ward's relationship had deteriorated, and Simmons believed he would likely need to testify as to why he did not object to the bracelet at the upcoming hearing. The court decided to appoint a different attorney to handle Ward's motion for a new trial but to keep Simmons in the case for other issues that may arise, because of Simmons' extensive knowledge about the case. The court expressed a desire to "move forward in this case without keeping Ward in jail forever trying to reeducate lawyers." No one mentioned Ward's e-mailed "pro se motions" during this hearing.

On June 15, 2020, the district court held an in-person hearing on both the motion for a new trial and sentencing. The court began by noting that Simmons was the present trial counsel, but the court appointed Brian Williams, an independent attorney, to present Ward's motion for a new trial because some of the issues potentially required testimony from Simmons.

Williams began with direct examination of Simmons, asking him about the jail bracelet. Simmons testified he saw the bracelet on Ward during one of the trial breaks. Simmons said he remarked to Ward, "'I didn't realize you all had the hospital-type bands on,'" and Ward responded, "'Yes.'" Simmons said this exchange represented "pretty much all of our conversation about it." Simmons testified Ward was wearing a long-sleeved shirt that day, and he did not know if the jury could see the bracelet. He admitted he raised no objection and did not inform the court of any problem with the bracelet. He did not ask Ward whether Ward wanted him to raise an objection. He testified it never occurred to him that the bracelet might be a problem.

Williams then tried to question Simmons about Verizon cell phone records, stating, "Was there also some Verizon records that were—regarding phone calls between—for the victim?" The district court sustained the State's relevance objection because the topic was outside the scope of the motion for a new trial. Williams then sought to question Simmons about a continuance, asking, "Did you consult Mr. Ward about the continuance, I believe you said it was maybe the 17th or 14th of February?" The State again objected, arguing that the question was outside the scope of the motion for a new trial. The district judge sustained the objection, explaining:

> "It has to be part of the motion. The continuance is not part of the motion, so [the State's] objection is appropriate, because it's outside the scope of the motion. I mean, I understand your client has some ineffective assistance claims that he wants to make at some point, and at some point he can do that, but today, the motion is limited to the issue of the bracelet."

Williams said Ward wanted to raise the claims so they could be a part of his direct appeal. The district court responded by noting because the State objected, the court could not hear the issue. The district court judge explained:

> "[T]he motion that was filed was based upon the failure to object and bring to the Court's attention the fact that there was apparently a bracelet on Mr. Ward. The State has the right at any time when a motion's been filed to challenge a conviction to require the person who makes the motion, the defendant, to specifically and in great detail, detail the allegations of what ineffective assistance of counsel is so the State can respond. And so that's why the [*sic*] this motion is limited today, because those details aren't in the motion.
> "Now just for client and counsel's edification, there is a procedure that can be used besides the Motion for New Trial procedure called an action under K.S.A. 60-1507 where those kind of issues can be presented. We're not doing that today and the only motion we have before us today is the Motion for New Trial based upon the bracelet issue, which the State had—was able to prepare for.

"I understand Mr. Ward wants to make additional claims, and he can do that, but he's got to do it by following the rules and the rules say you have to give proper notice, and the motion that was filed does not give notice of those other claims."

Ward then interrupted, mentioning his pro se motions and asking that they be heard. The district court judge again repeated that he was only hearing the motion for a new trial because the State had a right to have notice of the claims Ward was raising, so it could properly defend against them at a hearing. The judge said after he decided the pending motion for a new trial, Ward could discuss his other issues with Williams. He said the decision on how to address those issues, including whether Ward wanted to file another motion for a new trial or a K.S.A. 60-1507 motion, involved strategies Ward needed to discuss with Williams. The judge also noted that considering Ward's other issues at the current hearing may preclude Ward from later challenging his conviction.

After the focus of the hearing shifted back to the motion for a new trial, Ward testified about the jail bracelet. He stated, "After lunch and stuff, I sat there and I'd messed with it and I sit there and I showed Rand Simmons. I took it and I actually rotated it on my hand, on my wrist. Showed Rand Simmons, showed the jury, showed the judge." He also testified that he was wearing a long sleeve shirt and stated, "sometimes it was in [his sleeve], I'll admit. Sometimes it was in." He continued, "But sometimes it was in and sometimes it was out. And then I asked [Simmons] about it. And I sat there and I rotated it and I showed everybody, because I remember reading about that over at the law library." Ward testified that when he showed Simmons the bracelet, Simmons' response was that "[h]e just [sat] there and goes, Oh, here, here, just put it up. Put it up."

Later, on cross-examination, the prosecutor asked Ward, "And you're the one that actually showed it to the jury, lifted your arm up?" Ward responded, "I showed it to Rand Simmons. He didn't want to do nothing, so I sit there and rotated it and I showed you, I showed the jury, and I showed the judge." When the prosecutor asked Ward what he read

6

about in the law library, Ward responded, "[I]nmate clothing and stuff like that. It's against the law or it shows prejudice against the inmate." He testified that he read this before trial, and he has known it for a while. The prosecutor then asked Ward, "So you knew exactly what you were doing when you lifted your arm up that the jury would see jail attire, correct?" Ward responded, "As soon as the jail left it on me, yes, correct."

The district court ultimately denied Ward's motion for a new trial. While the court found it undisputed that Ward wore the bracelet on the first day of trial, it found no evidence the jury was prejudiced by the bracelet. The court noted the jury had acquitted Ward of several charges, including the most significant charge. He also pointed out Ward had admitted to conduct on the stand which supported the jury's conviction on the lesser included charges.

The district court continued to sentencing and sentenced Ward to a 136-month prison term.

ANALYSIS

Ward argues the district court abused its discretion in denying his motion for a new trial. A district court abuses its discretion if its action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Soto*, 310 Kan. 242, 257, 445 P.3d 1161 (2019).

Ward's reliance on *Williams*, 425 U.S. 501, and *Hall*, 220 Kan. 712, is misplaced. In *Williams*, Williams was arrested for (and later convicted of) assault with intent to commit murder with malice. Unable to post bond, he was held in custody while awaiting trial. Before trial, he asked a jail officer for his civilian clothes. The officer denied his request. Williams appeared at trial "in clothes that were distinctly marked as prison issue." 425 U.S. at 502. Neither Williams nor his counsel objected to Williams' attire at

7

trial. After the jury convicted Williams, he sought habeas corpus relief on the grounds that compelling him to wear a prison uniform at his jury trial violated his right to due process of law. *Williams v. Estelle*, 500 F.2d 206 (5th Cir. 1974).

The United States Supreme Court found Williams had waived his objection to the jail attire. 425 U.S. at 512-13. While it recognized that "compelling" an accused to stand trial before a jury while dressed in identifiable prison clothes violates the right to a fair trial under the 14th Amendment to the United States Constitution, it found silence of the accused does not equate to compulsion by the court. It surveyed several opinions which addressed the issue, noting courts generally require "an accused to object to being tried in jail garments, just as he must invoke or abandon other rights." 425 U.S. at 508. It found the central question is whether the accused has been compelled, against his or her will, to be tried in jail attire. 425 U.S. at 507. It pointed out some defendants prefer to wear jail attire, to elicit sympathy from the jury, and it would be improper to require the trial judge to sua sponte second-guess defense counsel's strategic or tactical decisions. 425 U.S. at 508, 512-13.

Our Supreme Court adopted this rule in *Hall*. There, Hall appeared for trial in jail clothing. After the jury panel had been sworn in for voir dire, defense counsel requested the entire panel be dismissed because Hall was not wearing civilian clothes. The judge denied his request but declared a recess and directed that Hall be permitted to wear civilian clothes. After he changed, the same panel was recalled and the trial proceeded.

On appeal, our Supreme Court found that "if a prisoner voluntarily chooses to be tried in prison garb or fails to object at the trial, his voluntary action or lack of action may constitute an effective waiver of his right to appear at the trial in civilian clothing." *Hall*, 220 Kan. at 715. But while it acknowledged Hall's objection to his jail attire, it refused to adopt a rule that "appearance in prison garb per se results in an unfair trial." 220 Kan. at 715. Instead, it held, "the appearance of an accused in prison garb at a trial or some

8

portion thereof, does not in and of itself constitute reversible error. It must be shown that the accused was prejudiced by such appearance in that such appearance resulted in an unfair trial." 220 Kan. at 715.

Ward has presented no evidence he was "compelled" to wear his jail bracelet against his will. Not only did he fail to object to wearing his jail bracelet at trial, but he voluntarily tried to draw attention to it. By his own behavior, he waived any objection he may have had to being tried with the jail bracelet.

Ward has also presented no evidence of prejudice. While the record does not reveal how long Ward wore the jail bracelet at trial, it does suggest the bracelet was covered at least part of the time by Ward's shirt sleeve. The district court provided counsel the opportunity to examine jurors regarding whether any had observed the bracelet. Ward's own attorney testified he did not notice the bracelet until a break, and the judge remarked that he never noticed it at all during the trial. Most importantly, as the district court pointed out, the bracelet did not prejudice the jury's view of Ward's presumed innocence because it acquitted Ward of several charges, including the most significant charge.

Under these circumstances, we do not find Ward's appearance in a jail bracelet at trial violated his right to a fair trial, nor do we find the district court abused its discretion in denying his motion for a new trial because of the presence of the bracelet. Further, even if we found the court erred, such error was harmless given the evidence presented at trial. As the court noted, Ward admitted to conduct on the stand which supported the jury's conviction on the lesser included charges. S.C. testified in detail about the incidents, and other witnesses corroborated her testimony about her injuries. Based on the evidence and the jury's verdict, we find any alleged error was harmless. See K.S.A. 2020 Supp. 60-261.

Ward also claims he was denied due process when the district court refused to hear arguments not raised in his motion for a new trial at the hearing on that motion. This is a legal question over which we have unlimited review. *State v. Moyer*, 306 Kan. 342, 377, 410 P.3d 71 (2017); see also *Murphy v. Nelson*, 260 Kan. 589, 594, 921 P.2d 1225 (1996) ("question of what process is due in a given factual situation is one of law" and the court has unlimited review over questions of law).

"'The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Moyer*, 306 Kan. at 277-78. As Ward notes: "[D]ue process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). "Due process is not a static concept; instead, its requirements vary to assure the basic fairness of each particular action according to its circumstances." *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006).

Ward contends the district court's refusal to hear his pro se ineffectiveness claims denied him due process. Yet, the district court did not refuse to hear these claims outright. Instead, it refused to hear them *at that time* since Ward had not provided the State with notice of the claims and an opportunity to respond. The only motion scheduled for the hearing was the motion for a new trial, which only mentioned the jail bracelet.

Rather than treat Ward unfairly, the district court explained the procedure available to Ward to properly raise those claims (a K.S.A. 60-1507 motion). It also suggested Ward consult with his new counsel, Williams, about those claims, presumably so Ward would have the benefit of Williams' advice on how to address them, rather than proceeding pro se. The court was protecting Ward's interests, rather than trampling on them, as he now claims.

While Ward now argues that eventually the State offered to agree to hear part of those claims, if it was allowed to respond later, the district court determined proceeding in that way was not in the parties' best interests. A court has an inherent power to control its docket. *Holt v. State*, 290 Kan. 491, 498, 232 P.3d 848 (2010). Unless the district court abused its discretion, we do not interfere with that power. See *Miller v. Glacier Development Co.*, 284 Kan. 476, 494, 161 P.3d 730 (2007). The district court was within its discretion to refuse to hear Ward's claims until he properly raised them and provided the State an opportunity to respond. His claims were not scheduled to be heard at the June 15, 2020 hearing, and we find no error in the district court refusing to address them at that time.

Affirmed.