NOT DESIGNATED FOR PUBLICATION

No. 129,500

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.K., a Minor Child.

MEMORANDUM OPINION

Appeal from Norton District Court; JODY ENFIELD, magistrate judge. Submitted without oral argument. Opinion filed May 29, 2026. Affirmed.

*Katie J. Schroeder*, of Schroeder Law Office, LLC, of Beloit, for appellant natural mother.

*Abigail R. Horn*, county attorney, and *Karen L. Griffiths*, of Norton, for appellee.

*Kyle C. Allen*, guardian ad litem, of Allen & McDowell Law, LLC, of Smith Center.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: M.K. was 10 years old when she came into the custody of the Kansas Department for Children and Families (DCF) in August 2022. By the time the district court terminated her mother's parental rights nearly 3 years later, M.K. had spent more than 30 months in out-of-home placements, and DCF or St. Francis Ministries (SFM) had been involved in her life, off and on, for over 6 of her 12 years. The natural mother (Mother) now appeals on three grounds. She contends: (1) The district court erred in denying her request to appoint new counsel on the day of her termination hearing; (2) the district court abused its discretion in terminating her parental rights; and (3) the district court abused its discretion in failing to consider a permanent custodianship as an alternative to terminating her parental rights. The natural father (Father) is not a party to this appeal. After careful review, we find no error; therefore, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

The State filed its child in need of care (CINC) petition in August 2022, invoking K.S.A. 38-2202(d)(1), (d)(2), and (d)(3). M.K. was placed in DCF's temporary custody, and Mother stipulated to the allegations, which resulted in a CINC adjudication.

Reintegration never took hold. Over the next two years, Mother continued to use methamphetamine, picked up a new drug-related arrest, failed to complete case plan tasks, and remained in a relationship marked by domestic violence with Father.

In October 2024, the State moved to terminate Mother's parental rights. Its motion rested on Mother's continued drug use, her failure to complete case plan tasks and comply with court orders, her drug-related arrest during the pendency of the case, the ongoing domestic violence, and the statutory presumptions of unfitness under K.S.A. 38-2271(a)(3), (a)(5), and (a)(6). The motion also emphasized M.K.'s significant past involvement with DCF and/or SFM and ongoing concerns of parental unfitness.

Because Mother does not challenge the district court's unfitness findings on appeal, the bulk of those facts can be left aside. What matters here is what happened on May 7, 2025, the day of the termination hearing. Mother was not present when proceedings began, and her attorney could not account for her whereabouts. After the State's first witness testified, Mother sent a fax to the court asking that her court-appointed attorney be replaced. The fax complained that counsel had not prepared for her trial and lacked confidence in her side of the story. It said nothing about where Mother was, why she was not in court, or whether transportation was an obstacle.

The district court took a brief recess to review the request and then turned to Mother's attorney for an account of his communication with her. Counsel described at least eight emails between January and April 2025 about trial preparation, repeated

telephone calls that went unanswered, and outreach hampered by Mother's repeated changes of phone number. He noted in particular that he had emailed Mother the trial date on January 16, 2025, and that she acknowledged receipt by email on January 20. The guardian ad litem and Father's counsel each told the court that Mother's attorney had communicated well throughout the case and had gone "above and beyond" to prepare for trial. Drawing on two years of overseeing the case, the district court added its own observation that it had seen no indication of friction between Mother and her attorney.

After weighing the timeliness of the request, the adequacy of its own inquiry, and whether any conflict had so undermined the attorney-client relationship as to prevent an adequate defense, the district court denied the request for new counsel. The hearing proceeded, with the remaining witnesses and exhibits presented in Mother's absence.

The district court later issued a written ruling finding Mother unfit on three statutory grounds. Under K.S.A. 38-2269(b)(3), the court relied on Mother's continued methamphetamine use, her failure to attend drug treatment, and her new drug-related arrest during the case. Under K.S.A. 38-2269(b)(4), it relied on M.K.'s generalized anxiety disorder, ADHD, and PTSD, all attributable to the lack of consistent parental care. And under K.S.A. 38-2269(b)(8), it relied on Mother's failure to adjust her circumstances, including her inability to maintain sobriety, safe housing, consistent employment, or reliable transportation; her restricted driver's license, which prevented her from transporting M.K. for daily activities; and her failure to complete case plan tasks despite extensive assistance. The court further found that Mother's unfitness was unlikely to change in the foreseeable future and that termination was in M.K.'s best interests, and it directed that M.K. remain in DCF custody with the permanency goal of adoption or permanent custodianship by the Secretary.

Mother filed two essentially identical motions to reconsider, asking that the termination order be set aside and a new hearing held at which she could appear

personally. The district court denied them. Notice of the May 2025 hearing had reached Mother in January, yet she made no request for a continuance until the morning of trial. Although she later claimed she lacked transportation, she had appeared remotely by Zoom at earlier hearings and had not asked to do so this time. On those facts, the district court concluded that Mother had nearly five months in which to communicate with her attorney, to seek a continuance, or to "address any known barrier to appearance," and that her failure to do so was not excusable.

Mother timely appealed. Additional facts are set out as necessary.

LEGAL ANALYSIS

Mother does not directly contest the district court's findings that she is unfit or that her unfitness is likely to continue. Any such challenge is therefore waived. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020). What she presents instead is, in substance, a single overlapping argument: that the district court's denial of her morning-of-trial request for new counsel deprived her of due process and tainted the discretionary decisions that followed, both the decision to terminate and the decision not to consider a permanent custodianship. We address the due process questions first and then turn to the discretionary rulings.

*No Due Process Violation*

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). When considering whether there has been a due process violation, appellate courts apply an unlimited standard of review. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). The narrower question of whether the district court should have appointed Mother substitute counsel is reviewed for abuse of discretion. A judicial action constitutes an abuse of

4

discretion when it is (1) based on error of law, (2) based on an error of fact, or (3) arbitrary, fanciful, or unreasonable. *State v. Ross*, 310 Kan. 216, 224-25, 445 P.3d 726 (2019).

Two threshold arguments undermine Mother's argument before its merits are reached. Her brief offers no supporting authority and no developed explanation of why the district court's ruling is unsound, each of which independently amounts to waiver. *In re Adoption of Baby Girl G.*, 311 Kan. at 803; *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018); *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Although she asserts that the district court "cited incorrect case law," she identified neither the cases the district court relied upon nor any she believes should have been applied. Beyond that, the argument she briefs on appeal does not match the one made below. Mother now frames the issue around her inability to attend the hearing for lack of transportation, but her fax to the district court said nothing about transportation, nothing about a continuance, and nothing about her absence. It simply asked for a different attorney. Even setting these difficulties aside and addressing the argument she preserved, it fails on the merits.

When the hearing opened, the district court had already considered whether the parents' absence warranted a continuance, noting that Mother had been served, that her attorney had emailed her the date, and that she had acknowledged the date by email. The court correctly identified the governing statute. Under K.S.A. 38-2248(f), a termination case "may proceed by proffer as to parties not present, unless they appear by counsel and have instructed counsel to object." *In re K.H.*, 56 Kan. App. 2d 1135, 1140-41, 444 P.3d 354 (2019). Here, there was no indication whether Mother objected as she had largely not responded to her attorney's calls or emails. However, the State chose not to proceed by proffer; it presented live testimony and exhibits. That manner of proceeding was wholly consistent with the Revised Kansas Code for Care of Children (Revised Code), K.S.A. 38-2201 et seq., which makes the child's safety and welfare paramount and requires

resolution without unnecessary delay. K.S.A. 38-2201(b)(1), (b)(4). The district court recognized as much, noting the case had been pending for over two years.

In ruling on the request for new counsel, the district court applied the framework Kansas courts apply in criminal cases, looking to timeliness, the adequacy of the court's inquiry, and whether any conflict has caused a total breakdown of communication. Another panel of this court has previously endorsed that approach in proceedings under the Revised Code. See *In re C.D.A.*, No. 108,903, 2013 WL 3491303 at *4 (Kan. App. 2013) (unpublished opinion). A review of each factor supports the denial of Mother's request for new counsel. The request was untimely, arriving only after the hearing had begun, and as the guardian ad litem aptly observed, if communication had really broken down, the problem would have surfaced months earlier rather than on the morning of trial. The court's inquiry was thorough. It included a careful review of the fax, a detailed colloquy with Mother's attorney about his outreach efforts, input from the guardian ad litem and Father's counsel, and the court's own observations from two years of proceedings. And in effect rejecting Mother's claims as not credible, the court found no conflict of interest, no disciplinary complaint, and no breakdown of communication that would prevent counsel from representing her.

Two additional considerations confirm the soundness of the ruling. The hearing had already been continued once at the joint request of Father and the State, and by May 2025, M.K. had been in out-of-home placements for nearly three years. Granting Mother's implicit request for further delay would have run squarely against the Revised Code's command of timely resolution, particularly where the district court has reasonably concluded that Mother's dissatisfaction with her counsel was not justified. On this record, neither due process nor sound discretion required the district court to do more than it did.

*The district court did not err in terminating Mother's parental rights.*

Mother's remaining contentions, that termination itself was an abuse of discretion and that the district court should have considered a permanent custodianship, rise and fall together. Both ask this court to second-guess a discretionary judgment that, on this record, was well within the district court's authority to make.

Once a parent has been found unfit, a point Mother does not contest, the decision whether to terminate is committed to the sound discretion of the district court. K.S.A. 38-2269(a). That discretion is guided by the best interests of the child, with primary consideration given to the child's physical, mental, and emotional health. K.S.A. 38-2269(g)(1). Stability, permanency, and timely disposition are central to that inquiry. *In re D.G.*, No. 125,724, 2023 WL 4675379, at *8 (Kan. App. 2023) (unpublished opinion). The burden of demonstrating an abuse of discretion rests with the parent challenging the decision. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

Mother argues that M.K.'s instability, behaviors, and tendency to run from placement have persisted since her removal, that M.K. cycled through 17 foster homes, and that the district court failed to credit M.K.'s wish for continued visitation with Mother. None of these points show an abuse of discretion. The instability Mother describes is in significant part a consequence of her own failure to complete reasonable case plan tasks. The number of foster placements, while regrettable, has limited bearing on Mother's fitness, as DCF foster homes are subject to rigorous licensing, vetting, and training requirements. See K.A.R. 30-47-800 et seq. Common sense suggests that a child who has struggled in such placements would not fare better in the care of an unfit parent. Mother's argument is a request to reweigh the evidence, which this court does not do. See *In re C.C.*, 29 Kan. App. 2d 950, 952, 34 P.3d 462 (2001). At most, she shows that reasonable minds could differ, but "[w]here reasonable minds can differ, discretion has not been abused." *State v. Broyles*, 272 Kan. 823, 841, 36 P.3d 259 (2001).

Mother further argues the district court failed to consider alternatives to termination of parental rights, such as a permanent custodianship. Mother herself acknowledges that "the current Child in Need of Care code does not require a court to consider alternatives to termination." A district court does not abuse its discretion by declining to take a step the law does not require. Mother's reliance on *In re K.P.*, 44 Kan. App. 2d 316, 235 P.3d 1255 (2010), is misplaced. That case held only that the district court there had not abused its discretion in choosing a permanent custodianship over termination, 44 Kan. App. 2d at 322-23, and it did not require every district court to consider that alternative. Where, as here, termination is itself a sound exercise of discretion, the failure to pursue an alternative the law does not require cannot be error.

Mother has not shown that no reasonable person would agree with the district court's decision to terminate her parental rights. See *Broyles*, 272 Kan. at 841. She has therefore failed to establish an abuse of discretion.

Affirmed.