No. 120,504

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF J.L.,
A Minor Child.

SYLLABUS BY THE COURT

1.

When evaluating a due process claim, a determination must first be made whether a fundamental liberty or property interest is implicated. If so, the court must then determine the nature and extent of the process that is due. Whether an individual's due process rights were violated is a question of law subject to de novo review.

2.

A parent has a fundamental liberty interest in making decisions regarding the care, custody, and control of his or her child.

3.

Before a parent can be deprived of the right to the custody, care, and control of his or her child, the parent is entitled to due process. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

4.

In determining the nature and extent of the process a parent is due, the three-factor balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), is to be used. Those three factors are:  (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the

State's interest in the procedure used, including the fiscal and administrative burdens additional or substitute procedure would incur.

5.

A component of due process requires the State to provide notice of a potential deprivation of the interest and an opportunity to be heard regarding the deprivation.

6.

To adjudicate a child as a child in need of care when the parent contests such a finding, the court shall hear evidence in support of adjudication, and the State is required to prove the same by clear and convincing evidence. When a parent is not present, the case may proceed by proffer unless the parent appears by counsel and has instructed counsel to object.

7.

The State's petition containing a blanket notice that if a parent failed to appear at any hearing the result would be the court making decisions without the parent's input and could result in a default judgment did not satisfy the notice requirements of K.S.A. 2018 Supp. 60-255 where the father had previously appeared in the case nor did it satisfy the minimum due process requirements for notice when the purpose of the hearing was to consider pretrial matters and the default judgment granted was adjudication of the child as a child in need of care.

Appeal from Shawnee District Court; DARIAN P. DERNOVISH, judge. Opinion filed July 19, 2019. Reversed and remanded with directions.

*Rachel I. Hockenbarger*, for appellant natural father.

*Morgan L. Hall*, deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

POWELL, J.: A father has a constitutional right to parent his child. Before that right may be impaired or taken away, a scrupulous observance of due process is called for. In the case before us, J.J.L. (Father) appeals the district court's decision to adjudicate by default his son, J.L., as a child in need of care (CINC) at a pretrial conference hearing without advance notice even though Father's counsel was present and Father was only 10 minutes late. Because such an action offends due process, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2018, the State filed a petition alleging J.L. was a child in need of care. In this petition, the State alleged J.L witnessed an "unknown male" shoot his mother inside of the home, that there were prior reports of domestic violence between J.L.'s mother and Father, and that it was believed that Father would attempt to remove J.L. from the jurisdiction to prevent him from testifying regarding the incident. On the same day, after a temporary custody hearing at which Father appeared in person, J.L. was placed in the temporary custody of the Secretary of the Department for Children and Families. On May 21, 2018, a review hearing was held, and Father appeared in person. On June 28, 2018, another review hearing was held, and Father again appeared in person. At this hearing a prior restraining order on Father was lifted; the district court authorized supervised visits between J.L. and Father; and both of J.L.'s parents requested a trial on the CINC petition, which was set for December 18 and 19, 2018. No pretrial conference date was set at the time.

On November 13, 2018, the district court conducted a pretrial conference hearing. According to Father's attorney, notice of the pretrial conference was apparently mailed on September 27, 2018, listing Father's address as "unknown." A copy of this notice does

3

not appear in the record on appeal. The following exchange occurred at the pretrial conference:

"THE COURT: Okay. Usually the parties are here. Why aren't the parties here? Were they told not to be here. Or, what's going on?

"[GUARDIAN AD LITEM]: They were ordered to appear.

"MR. DEBENHAM [FATHER'S ATTORNEY]: Yeah. On June 25th, my client was here and then got the trial dates of December 18 through 19. I don't think there was a pre-trial set then. Or, if it [was], it was changed. And then, notice of this pre-trial was mailed out on September 27th listing an unknown address for 'father.' Father does move around. He doesn't have a set address. I had mailed him a letter at the address he said we usually forward things on and he wasn't there. So, I guess, my thought is is that he, you know, publication probably would have worked better in this instance. But the State did use the available information it had on his address. Which is, he had earlier.

"THE COURT: Have you had contact with him, Mr. Debenham?

"MR. DEBENHAM: No. Well, yes. I have had contact with him. Not, not recently.

"THE COURT: You haven't had recent contact with him?

"MR. DEBENHAM: I sent him a letter on October 23rd to the address he said was the best one to try to get a hold of him at. You know, telling him I needed to get a bunch of stuff done, please get a hold of me. And, he has not contacted me since then.

. . . .

"[THE STATE]: Your Honor, with regard, let me just start with regards to the father. We were previously here on June 25th. And, Mr. Debenham is correct. This was set for trial. How, then, we set this pre-trial conference. However, per the petition that

4

was filed and per statute, the parties, you have a duty to keep the Court as well as their attorneys updated on their contact information. So, when additional hearings are set, they receive proper notice of that. It appears that father has failed to do so, as he hasn't had contact with his attorney. So, the State would move to, move for default with regards to father based on the petition.

. . . .

"THE COURT:  Okay. All right. Well, gentlemen, I would like to, it looks like based on the petition and based on the pre-trial questionnaires you have, have had some contact with the clients. They were ordered to be here. They are not here. So, based on that, the Court will grant the State's motion with respect to the father and find the father in default. The Court will also grant the motion by the guardian ad litem with respect to the mother and find her in default. They're both in default."

The district court then admitted a report from KVC and suggested moving to disposition. However, agency staff were not present to testify so the district court set the case for disposition on a later date. Then the following occurred:

"THE COURT:  Based that they're both in default. And I do adjudicate that [J.L.] is a child in need of care pursuant to the relevant statutes attached to the petition and the affidavits in support therein. Both parties had notice of this. With respect to [Mother], she was supposed to be here. She was ordered to be here. You've had contact with her. She chose not to show up. Mr. Debenham, I, I beat this into their heads. I beat this into their heads. You guys work hard. You try to put on a case for these people and they don't stay in contact with you and it makes it impossible. I tell them every time at docket. It is your responsibility to get a hold of your attorneys. And if they move, they're supposed to tell you. They're supposed to give you a phone number, e-mail address, something. At some point, they have to take some responsibility for this.

"MR. DEBENHAM:  There's my client.

5

"THE COURT: Okay. Very good. All right. So, we will find them in default. Now, what's the, give me the next docket date."

Father's attorney then moved for the district court to reconsider the default judgment against Father:

"MR. DEBENHAM: I might point out that my client, even though he's 10 minutes late, he's here and if we can undo the default, I can get you to withdraw the default.

"THE COURT: What's the reason why he wasn't here?

"MR. DEBENHAM: I haven't had a chance to talk with him, yet.

"THE COURT: Okay. Why weren't you here, son?

"[FATHER]: When—

"THE COURT: Why weren't you here?

"[FATHER]: When? Today?

"THE COURT: Yeah.

"[FATHER]: I was just running late.

"THE COURT: Okay.

"[FATHER]: I forgot I had Court today. When I realized, I was all the way in Eskridge. So.

"THE COURT: Okay. There's not good cause there. I'm gonna continue the default judgment. Sir, you're ordered to appear on December 17th at 11:15."

6

The order adjudicating J.L. a CINC was filed on December 6, 2018. Father timely appeals the adjudication pursuant to K.S.A. 2018 Supp. 38-2273(a).

ANALYSIS

On appeal, Father makes two arguments. First, he argues his due process rights were violated when the district court entered a default judgment against him adjudicating his son to be a CINC. Second, Father argues there was an insufficient factual basis to adjudicate J.L. a CINC. Because the first issue is dispositive, we decline to address the second.

WAS FATHER DENIED DUE PROCESS WHEN THE DISTRICT COURT
ENTERED AN ADJUDICATION ORDER BY DEFAULT?

Father argues his due process rights were violated when the district court entered a default judgment against him, finding his son to be a CINC when he had appeared for the entirety of the pretrial conference through his attorney and personally arrived at the hearing 10 minutes late. In response, the State argues that its interests in the safety and welfare of J.L., as well as the need for orderly and expeditious proceedings, outweigh Father's interests.

When evaluating a due process claim, a determination must first be made whether a fundamental liberty or property interest is implicated. If so, we must then determine the nature and extent of the process that is due. See *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002). "Whether an individual's due process rights were violated is a question of law subject to de novo review." *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 81, 209 P.3d 200 (2009).

It is well established that a father has a fundamental liberty interest in making decisions regarding the care, custody, and control of his child. See *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *In re B.D.Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). As a result, before a father can be deprived of the right to the custody, care, and control of his child, he is entitled to due process. See *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). The right to due process is not fixed in stone, however, and what process is due depends on the specific circumstances. *In re J.L.D.*, 14 Kan. App. 2d 487, 490, 794 P.2d 319 (1990), *disapproved of on other grounds by In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 209 P.3d 200 (2009). "A due process violation exists . . . when a claimant is able to establish that he or she was denied a specific procedural protection." *In re J.D.C.*, 284 Kan. at 166.

A three-part balancing test is used to determine the nature and extent of the process due. This test examines:

"(1)     the individual interest at stake;

"(2)     The risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and

"(3)     The State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335." *In re J.D.C.*, 284 Kan. at 166-67.

A.     *Individual Interest at Stake*

As we've already outlined, a father has a constitutionally protected liberty interest in the relationship with his children. See *In re B.D.Y.*, 286 Kan. at 697-98. This right is

8

fundamental. *In re R.S.*, 50 Kan. App. 2d 1105, 1115, 336 P.3d 903 (2014). In fact, our court has held that a father's interest in the care and custody of his child "far outweighs the State's interest in summary adjudication." *In re S.M.*, 12 Kan. App. 2d 255, 256, 738 P.2d 883 (1987). Admittedly, while J.L.'s adjudication as a CINC is not the ultimate disposition of Father's relationship with J.L.—unlike an unfitness finding or termination of his parental rights—it is "the first necessary step" on the path towards severing the bonds between Father and J.L., because if a court refuses to find a child a CINC, any further proceedings under the revised Kansas code for care of children, K.S.A. 2018 Supp. 38-2201 et seq. (juvenile code) cease. K.S.A. 2018 Supp. 38-2251(a); see *In re R.B.S.*, 29 Kan. App. 2d 1023, 1027, 36 P.3d 300 (2001). The significance of a CINC finding is also apparent due to the clear and convincing standard of evidence required to adjudicate a child a CINC. See K.S.A. 2018 Supp. 38-2250.

B.      *The Risk of Erroneous Deprivation*

To find a child a CINC when a party contests such a finding, "the court shall hear evidence as to those persons, if they are present. The case may proceed by proffer as to persons not present, unless they appear by counsel and have instructed counsel to object." K.S.A. 2018 Supp. 38-2248(e); see also *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003) ("The purpose of a proffer is to make an adequate record of the evidence to be introduced."). The State is required to prove that a child is a CINC by clear and convincing evidence. K.S.A. 2018 Supp. 38-2250. Thus, before Father's parental rights could be impaired by the adjudication of J.L. as a CINC, the State was required to prove the need for adjudication by clear and convincing evidence. Father had the option to waive his right to be present by stipulating to or not contesting an adjudication or by failing to appear and not instructing his attorney to object.

But Father's ability to enforce this right to be present is predicated on adequate notice that an adjudication hearing is going to be held. The juvenile code requires

9

advance notice before a hearing may be conducted. K.S.A. 2018 Supp. 38-2239. A component of "due process requires the State to provide notice of a potential deprivation of the interest and an opportunity to be heard regarding the deprivation." *In re Adoption of A.A.T.*, 287 Kan. at 600. The rationale for this is clear—if Father is put on notice of an upcoming adjudication hearing, he then can ensure his presence or instruct his counsel to hold the State to its burden of proof, thus protecting his rights. Without such notice, he cannot weigh the importance of his attendance at the hearing or have the opportunity to instruct his counsel.

As outlined in the facts, after the petition had been filed, Father personally attended two review hearings on May 21, 2018, and June 28, 2018. At this second hearing a prior restraining order against Father was lifted; supervised visits between Father and J.L. were allowed; and trial dates of December 18 and 19, 2018, were set concerning the adjudication of J.L. as a CINC because both the mother and Father contested any CINC finding. However, no pretrial conference was set at this second hearing.

While a copy of the actual notice is not in the record, according to the hearing transcript of the pretrial conference, a notice was apparently mailed on September 27, 2018, establishing November 13, 2018, as the date of the pretrial conference, but it listed Father's address as "unknown." The record suggests Father did not keep the court apprised of his current address. Father's counsel also mailed Father a letter informing him of the pretrial conference. Nevertheless, despite questions in the record about notice, Father clearly had actual notice of the hearing because he appeared, although his appearance was tardy. But there is nothing in the record that shows Father was on notice that any failure on his part to appear at the pretrial conference could result in a default CINC adjudication.

10

We recognize that the State's petition to adjudicate J.L. as a CINC stated: "All parties are hereby notified that pursuant to K.S.A. 38-2234 and K.S.A. 60-255 that if you do not appear at the hearing, the court will be making decisions without your input which could result in a default judgment against either parent who fails to appear." We are skeptical of the application of the default judgment statute, K.S.A. 2018 Supp. 60-255, to proceedings under the juvenile code because the juvenile code is more specific and contains numerous procedural provisions of its own and specifically incorporates the code of civil procedure in only a few instances. See, e.g., K.S.A. 2018 Supp. 38-2204 (venue); K.S.A. 2018 Supp. 38-2233 through 38-2240 (filing of petition, summons, notice, service, proof of service, witness fees); K.S.A. 2018 Supp. 38-2245 (specifically incorporating civil discovery rules contained in K.S.A. 60-226 through 60-237); K.S.A. 2018 Supp. 38-2249 ("the rules of evidence of the code of civil procedure shall apply"); see also *In re R.B.S.*, 29 Kan. App. 2d at 1026-27 (juvenile code controlling over civil procedure code); *In re A.H.*, No. 103,138, 2010 WL 1379713, at *2-3 (Kan. App. 2010) (unpublished opinion) (no provision in juvenile code authorizing default judgment in termination proceeding). This notwithstanding, even if we assume the applicability of K.S.A. 2018 Supp. 60-255, parties subject to default judgment but who have appeared personally or through a representative "must be served with written notice" of the adverse party's desire to obtain a default judgment. K.S.A. 2018 Supp. 60-255(a). Given Father's personal appearances at prior hearings in the case, the State was required to give him advance written notice of its desire to seek a default judgment. We hold that the blanket notice in the petition does not satisfy the notice requirements of K.S.A. 2018 Supp. 60-255(a) under the facts before us because it does not signal the State's intent to seek a default judgment at the pretrial hearing.

Moreover, in light of the fundamental rights at stake, Father had a due process right to advance notice that a CINC adjudication could happen at the pending pretrial hearing before such an order could be entered, irrespective of what is required by K.S.A. 2018 Supp. 60-255. The pending hearing to which Father appeared late concerned

11

resolving various pretrial matters, not whether J.L. would be adjudicated a CINC. The fact that the parties had notice of an upcoming pretrial conference hearing did not equate to notice that an adjudication could be made at the hearing. See *Forer v. Perez-Lambkins*, 42 Kan. App. 2d 742, 745, 216 P.3d 718 (2009) (notice of pretrial conference and pretrial questionnaire insufficient notice for default judgment). Neither Father nor his counsel could have anticipated the district court's action in granting a default adjudication and were unprepared for it. In fact, even the prosecutor was unprepared; although she requested the default, she was not really anticipating an adjudication as she had none of the agency workers present and available to provide any testimony supporting an adjudication.

We pause to note, however, that our conclusion could very well be different under different facts. For example, in the present case the parties were clearly on notice of the pending adjudication hearing set for December 2018. If on the day of that hearing the district court had entered a default adjudication of J.L. as a CINC in accordance with K.S.A. 2018 Supp. 38-2248(e) based upon proffered evidence in the absence of Father and his counsel's objection, a compelling argument could be made that Father could not claim a deprivation of due process. He would have had advance notice that the district court's decision on adjudication was imminent and would have had the opportunity to be heard on the matter. See *In re D.H.*, No. 119,882, 2019 WL 1087762, at *4-5 (Kan. App. 2019) (unpublished opinion) (default judgment terminating father's parental rights upheld where father given notice but failed to appear at termination hearing).

In our view, the risk of an erroneous deprivation of Father's fundamental parental rights is high given what transpired. The district court's action of granting a default adjudication without adequate notice denied Father the opportunity to be meaningfully heard or to hold the State to its burden of proof. Moreover, the law favors a trial on the merits, and the granting of a default judgment denied Father the opportunity to both challenge the State's evidence and present his own. See *Sharp v. Sharp*, 196 Kan. 38, 41-

42, 409 P.2d 1019 (1966). Instead, the adjudication finding was initially based merely on Father's nonappearance and then only on the unproven allegations contained in the State's petition and the supporting application. Under the circumstances presented here, we find this an inadequate foundation upon which to base a CINC adjudication. To require the State to put Father on notice that an adjudication could occur at the hearing before such an order is entered is a minimal burden.

C.    *The State's Interest in the Procedure*

The State's principal defense to Father's due process claim is that the welfare of J.L. and the need for expeditious proceedings justify the district court's action. We agree that in a case involving the care of children the State has a considerable interest in resolving the case quickly and determining a course of action which will lead to a stable home for the children. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). "'It is a long established rule that timing in these cases should be considered in "child time" rather than "adult time." *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002).'" *In re M.S.*, No. 119,797, 2019 WL 2554347, at *5 (Kan. App. 2019). However, these interests were not served by the district court's action here because the actual adjudication hearing was set for a month later. While the record is unclear on this point, we suspect the district court could have proceeded with the pretrial conference in the absence of Father given that Father's counsel was present and was likely well aware of the factual and legal issues involved. We certainly think the pretrial conference could have been commenced 10 minutes later after Father had arrived. And nothing in the record suggests that the adjudication hearing needed to be delayed as a result of Father's tardiness. Accordingly, we fail to see how any of the State's interests were furthered here.

We can appreciate a district court's frustration when parents fail to show up at important hearings concerning the welfare of their children. But the record here suggests that the district court acted more out of pique over Father's late appearance than over the

13

welfare of J.L. and the need for expeditious proceedings. The fact that the district court refused to rescind its default judgment after Father arrived only 10 minutes late reinforces this perception. The district court violated Father's due process rights when it adjudicated J.L. as a CINC by default in this instance. The district court's adjudication of J.L. as a CINC is reversed, and the case is remanded for further proceedings consistent with this opinion. Father's second claim on appeal that insufficient evidence supported the district court's adjudication is moot.

Reversed and remanded.