No. 126,487

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of B.H.,
a Minor Child.

SYLLABUS BY THE COURT

1.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution recognizes a parent's relationship with his or her child is a protected liberty interest. This liberty interest acknowledges a parent's right to make decisions regarding the child's care, custody, and control. This fundamental right remains intact during a child in need of care (CINC) case. Even if a parent has his or her child removed from the parent's custody during a CINC case, the parent's liberty interest is upheld unless a court terminates parental rights. Consequently, throughout a CINC case, a parent's fundamental liberty interest requires procedural due process.

2.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. This is particularly important in an adversarial setting such as a parental rights termination hearing. These two facets of due process—notice and an opportunity to be heard—ensure that a parent's fundamental rights are not terminated without procedural due process.

3.

Indigent parents have a statutory right to counsel. As such, courts are statutorily required to appoint lawyers for indigent parents in a child in need of care case. This statutory right to counsel remains with the parent facing the termination of their parental rights.

1

4.

Children have a right to permanency within a time frame reasonable to them. The Legislature recognized the difference between adult and child time because a child perceives time differently than adults. Consequently, the Kansas Code for Care of Children, K.S.A. 38-2201 et seq., specifically sets out an essential objective:  CINC proceedings should be disposed of without any unnecessary delay.

5.

In determining whether a court should appoint new counsel in a CINC proceeding, an indigent parent must show justifiable dissatisfaction with his or her appointed counsel. The focus of a justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the parent's perception or view of his or her attorney. As such, a party demonstrates justifiable dissatisfaction by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communications between client and counsel. In making this determination, the district court must conduct some sort of investigation.

6.

Courts should thoroughly inquire about a parent's motion for new counsel or an attorney's motion to withdraw from representing a parent to ensure that the case proceeds toward a timely resolution for the child. This heightened scrutiny works in harmony with the Kansas Code for Care of Children's expressed policy of disposing of proceedings without unnecessary delay.

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Submitted without oral argument. Opinion filed July 5, 2024. Reversed and remanded with directions.

*Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, for appellant natural mother.

*Kevin M. Hill*, assistant county attorney, for appellee.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

PICKERING, J.: We have recognized without hesitation that a parent's relationship with his or her child is a protected liberty interest. This liberty interest, which stems from the Due Process Clause of the Fourteenth Amendment to the United States Constitution, acknowledges a parent's right to make decisions regarding the child's care, custody, and control. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *In re Cooper*, 230 Kan. 57, 64, 631 P.2d 632 (1981). This fundamental right remains intact during a child in need of care (CINC) case. Even if a parent has his or her child removed from the parent's custody during a CINC case, the parent's liberty interest is upheld unless a court terminates parental rights. Consequently, throughout a CINC case, a parent's fundamental liberty interest requires procedural due process. See *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007).

It is also without question that the essential elements of due process of law are notice and an opportunity to be heard in an orderly proceeding as dictated by the nature of the case. *In re J.D.C.*, 284 Kan. at 166. This is particularly important in an adversarial setting such as a parental rights termination hearing. Indeed, those two facets of due process—notice and an opportunity to be heard—ensure that a parent's fundamental rights are not terminated without procedural due process.

Along with the fundamental rights of a parent is a child's right to permanency and stability. Undoubtedly, "children have a right to permanency within a time frame reasonable to them." *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). The Legislature recognized and stated the difference between adult and child time, as a child perceives time differently than adults. *In re E.L.*, 61 Kan. App. 2d 311, 328, 502 P.3d 1049 (2021); see K.S.A. 38-2269(a). Consequently, the Kansas Code for Care of Children (Code), K.S.A. 38-2201 et seq., specifically sets out an essential objective: CINC proceedings should be disposed of without any unnecessary delay. K.S.A. 38-

3

2201(b)(4). This objective is met through the orderly procession of hearings within the "timetable of CINC proceedings." See *In re J.A.H.*, 285 Kan. 375, 386, 172 P.3d 1 (2007).

In this case, the district court allowed counsel for K.H. (Mother) to withdraw with minimal inquiry and denied Mother's motion to continue the termination hearing and appoint new counsel. The court then simultaneously ordered the termination hearing to proceed and ordered Mother to serve as her own attorney. This was done despite Mother not waiving her right to counsel, not receiving any notice that she would have to represent herself, and not given time to prepare.

K.H. appeals the district court's termination of her right to parent B.H. (born in 2012). She contends that the district court violated her right to due process because the court allowed her appointed attorney to withdraw based on Mother's allegations of ineffective assistance of counsel, denied her motion to continue to obtain new counsel, and proceeded to conduct an evidentiary hearing on the termination of Mother's parental rights while she was without counsel. Mother further contends that the district court lacked clear and convincing evidence of her unfitness before it terminated her parental rights. Finally, she argues that the district court abused its discretion in finding that termination of her parental rights was in the best interests of B.H.

A CINC CASE RESULTS IN THE TERMINATION OF MOTHER'S PARENTAL RIGHTS

On March 16, 2021, the Jackson County Attorney filed a petition, alleging that B.H. was a child in need of care (CINC). While the petition and subsequent hearings involved both B.H.'s father, S.A. (Father), and B.H.'s mother, K.H. (Mother), Father is not a party to this appeal, and we focus our discussion only on Mother. The district court ordered B.H. to be placed in the custody of the Department for Children and Families (DCF) in out-of-home placement. The child, B.H., was adjudicated as a CINC on April

4

15, 2021, and at the following disposition hearing, the court adopted the permanency plan of reintegration, and it ordered B.H. to remain in DCF custody in out-of-home placement. One of the court's orders was for Mother to submit to a comprehensive psychological and parenting evaluation, which was later conducted by Dr. J. Stephen Hazel, a licensed psychologist. At the November 18, 2021 permanency hearing, the district court adopted a dual goal of reintegration/adoption for the permanency plan.

The district court held another permanency hearing on January 20, 2022, at which time it found that reintegration was not a viable option and ordered KVC Behavioral Healthcare, the agency responsible for the care of children served by DCF, to submit a report to the County Attorney outlining factors supporting termination of parental rights. On June 2, 2022, the State filed a motion to terminate both parents' rights and alleged that Mother had failed in achieving her case plan tasks.

The district court scheduled a termination hearing for October 5, 2022. On September 22, 2022, Mother filed a pro se motion requesting new counsel and a motion stating that she wanted to appeal the decision to change the case plan to adoption because she had ineffective assistance of counsel at that time. Mother's attorney moved to withdraw on September 27, 2022, citing a conflict, and filed a motion for continuance of the termination hearing. Without a hearing, the district court granted the withdrawal on October 3, 2022. The district court appointed a second attorney for Mother.

The district court rescheduled the termination hearing to January 30, 2023. Two weeks before the hearing, Mother's second attorney moved to withdraw, stating that Mother "persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent." Mother's attorney also filed for a continuance of the termination hearing. There was no hearing on the attorney's motion to withdraw. The district court allowed the withdrawal and reset the termination hearing to March 16, 2023. The district court appointed Mother her third attorney on January 30,

2023. At a later point, at the request of Mother's attorney, the termination hearing was rescheduled for May 18, 2023.

On May 17, 2023, Mother filed a pro se motion claiming ineffective assistance of counsel. Her motion stated: "(1) I feel he's not representing me to his best of ability[;] (2) He doesn't want to manage the case, how I want to[;] (3) He fails to prioritize my case."

That same day her third attorney moved to withdraw based on a conflict. At the termination hearing on May 18, 2023, the district court considered Mother's motion to remove her attorney and granted the attorney's motion to withdraw.

In consideration of Mother's motion to remove her third attorney, the district court stated:

> "In the Court's view, given what's happened in this case, it appears to be simply another delay tactic by you. You know how to get rid of attorneys, and you've done it. And, so, the Court is forced to say, well, when do we move forward with this case? I appoint another attorney; they are gonna withdraw, because you're gonna pull this again. . . . The attorneys, as I look back, that you have had have all been very experienced in this area of the law, have done numerous cases. So I don't see how I can appoint an attorney that is gonna be satisfactory and us be here in 90 days, because that's what we're talking about, and that lawyer gets relieved of duty, and we continue it again. What, we're gonna just continue this till [B.H.] is an adult?"

When Mother tried to speak, the district court cut her off: "No. You are gonna listen to me for a little bit here because this is where we are with this. And I will give [your attorney] some choice in this, but I'm inclined to grant his motion, and you can represent yourself in this matter."

The district court did not consider continuing the termination hearing for Mother to obtain new counsel: "I am not going to continue to do this. I don't think I have to when the Court sees this as what I believe to be an obvious technique to continue these matters effectively forever." The court continued, "So I'm just letting you know, if [your attorney] withdraws, you are gonna represent yourself today. We are going to move forward with this case."

Mother attempted to clarify her reasons for wanting her attorneys to be removed, but the district court interrupted her and stated, "One, it's not your attorney's job for them to do exactly what you tell them to do. They have to stay within their ethics, and they have to litigate the case based on their decisions." The court then stated, "Your comments are welcome, but you are not running the case, and you don't get to tell the attorneys, I demand that you do this or that. That's what you're saying in what you filed. You don't understand."

The district court then asked Mother, "So with regard to an attorney, then, are you prepared to proceed without representation today?" Mother said, "No. I don't think it's fair I should have to proceed without proper representation." The district court reiterated that it was not continuing the hearing given that Mother had had three attorneys.

Mother protested, "He doesn't care to represent me, though. I mean his exact words were, 'if I am stuck representing you.'" The district court then asked the attorney if he still felt it was appropriate to withdraw, to which he said, "Yes." The district court excused Mother's attorney and proceeded with the hearing to terminate her parental rights.

The State's first witness was Dr. Hazel, who had provided psychological testing and a parenting assessment on Mother. His findings were contained in a 20-page report, State's exhibit No. 1, which was admitted into evidence. The report mentioned that

Mother's history of instability and substance abuse reflected concerns whether she could consistently meet B.H.'s needs and place his needs above her own. Dr. Hazel had a particular concern that Mother blamed others and minimized her own faults.

When it came time for Mother to cross-examine Dr. Hazel, the district court asked Mother if she had any questions for Dr. Hazel. Mother replied, "This is the first time I've seen this report. I don't know how you expect me to even be able to go over or ask him anything based off his report when this is the first time I've ever even got to see this report." The district court asked again if Mother had any questions to ask the doctor. "Yeah, I do, but I don't know how to ask them," Mother said. The district court replied, "You say you have questions. Then just ask them as they come into your head." Mother said, "I don't see how that's gonna be fair at all." Ultimately, Mother declined to examine Dr. Hazel.

At that point in the hearing, Mother attempted to leave the courtroom. The district court asked, "[Mother], where are you going?" Mother said, "I have to leave. I don't know how to do this. I don't know how to represent myself." To which the district court replied, "Okay. You are not leaving this courtroom." Mother said, "I don't know how to do this. . . . I don't know what to do here to represent myself. I have no idea." The district court stated, "Well, we'll continue."

The State then called its second witness, Zoe Mulkey, a KVC case manager who had been assigned to B.H.'s case since April 2022. Mulkey testified that Mother had not been successful in completing her case plan objectives. While Mother was cross-examining Mulkey, Mother attempted to introduce evidence that she passed a drug test, but the district court told her she would have an opportunity to present evidence later. Mother responded, "I don't know how it works; I'm sorry." To which the district court replied, "Well, I just explained it to you."

8

At the close of the State's case, the district court asked Mother if she had any witnesses to call. Mother suggested that she wanted to call witnesses, but her attorney had not subpoenaed anyone, and none were present. Mother testified on her own behalf. She was without counsel to object when she provided testimony via cross-examination and did not conduct any redirect testimony. After Mother's testimony, she rested and presented no other witnesses. The parties were offered to present closing arguments. When the court asked Mother for her closing argument, she responded: "I don't think it matters what I'm gonna say, because people's minds have already made up, so, no." The district court ruled from the bench and terminated Mother's parental rights. Mother now appeals.

WE ANALYZE MOTHER'S DUE PROCESS ARGUMENTS

*Preservation*

Mother argues on appeal that we can infer from her words that if she was forced to represent herself in the termination hearing, then she would be denied due process. But Mother did not argue to the district court that her constitutional rights were being violated. As a general rule, we do not review constitutional grounds for reversal raised for the first time on appeal. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014).

There are at least three exceptions to this rule, including "the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; . . . consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights;" and the district court is right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

To invoke an exception to the general rule, an appellant is required to explain why an issue was not raised in district court and provide at least one reason why the court should consider the unpreserved issue. See Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36).

Mother argues that this issue was raised in district court when she stated the hearing was unfair and she was unable to act as her own attorney and our consideration of this issue is necessary to serve the ends of justice or to prevent the denial of her fundamental rights. She asserts that the district court's decision to deny a continuance and require that she proceed with the termination hearing without counsel amounted to a denial of a fair hearing, specifically that she was denied her right to be heard at a meaningful time in a meaningful manner. Mother has complied with Rule 6.02(a)(5).

Over 100 years ago, the United States Supreme Court in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." And in 1925, the United States Supreme Court recognized a parent's constitutional rights "to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925).

Our highest court has also recognized that a parent has a fundamental liberty interest, protected by the Fourteenth Amendment, in making decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of these parental rights, the parent is entitled to due process of law. *Troxel*, 530 U.S. at 65-66. Undoubtedly, a parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008).

10

The United States Supreme Court has also stated that there was no dispute "'that state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause.'" *Santosky*, 455 U.S. at 753; *Lassiter v. Department of Social Services*, 452 U.S. 18, 37, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981) (Blackmun, J., dissenting). Our Supreme Court agrees. See *In re P.R.*, 312 Kan. 767, 778, 480 P.3d 778 (2021). We find this is a matter of the potential denial of Mother's fundamental rights. Thus, we will consider her arguments.

*Standard of Review*

"The question of whether due process has been violated in a particular case is one of law, reviewable de novo on appeal." *In re J.D.C.*, 284 Kan. 155, Syl. ¶ 7.

*We Analyze Whether Mother's Due Process Rights Were Violated*

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. at 166. "Due process is not a static concept; instead, its requirements vary to assure the basic fairness of each particular action according to its circumstances." *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006); *In re J.L.D.*, 14 Kan. App. 2d 487, 490, 794 P.2d 319 (1990).

Mother contends that the district court's denial of her continuation motion, ordering the parental termination hearing to begin that same day, and ordering her to appear pro se despite no waiver of her statutory right to counsel nor any ability for her to effectively participate, resulted in an unfair parental termination hearing and a violation of Mother's due process rights. As such the result of denying the continuance and proceeding to a termination hearing without representation of counsel was a denial of her

11

opportunity to be heard and to defend in her parental termination hearing. The State frames this issue as whether the district court abused its discretion in denying mother's continuation motion.

*A Due Process Analysis*

When evaluating a due process claim, appellate courts first determine "whether a fundamental liberty or property interest is implicated. If so, [the court] must then determine the nature and extent of process that is due." *In re J.L.*, 57 Kan. App. 2d 60, 64, 449 P.3d 762 (2019).

As referenced above, the Fourteenth Amendment forbids state governments from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Therefore, the question presented is what process is due? What rights are due under the due process clause "depends on the specific circumstances." *In re J.L.*, 57 Kan. App. 2d at 64-65. "A due process violation exists . . . when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled." *In re J.D.C.*, 284 Kan. at 166. The Due Process Clause gives an indigent parent in a CINC case a right to counsel in some cases. See *Lassiter*, 452 U.S. at 27-28.

In *Lassiter*, the United States Supreme Court stated: "The case of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 [1976], propounds three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter*, 452 U.S. at 27. The *Lassiter* Court instructs that "[w]e must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 27.

Following *Lassiter*, Kansas courts adopted the three-part balancing test from *Mathews* to determine the nature and extent of what due process requires. *In re J.D.C.*, 284 Kan. at 166-67. Accordingly, we apply the *Mathews* factors in this CINC proceeding. The factors in this balancing test are:

"'(1) the individual interest at stake;

"'(2) The risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and

"'(3) The State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. [Citation omitted.]'" *In re J.L.*, 57 Kan. App. 2d at 65.

In applying these factors, we are mindful that a parent has a statutory right to counsel. K.S.A. 38-2205(b)(1). These factors are examined below.

1.      *The Individual Interest at Stake*

The United States Supreme Court's decisions "have by now made plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" *Lassiter*, 452 U.S. at 27.

Candidly, the *Lassiter* Court recognizes the conflicting interests of the State and the parent: "Here the State has sought not simply to infringe upon that interest but to end it. If the State prevails, it will have worked a unique kind of deprivation." *Lassiter*, 452 U.S. at 27; cf. *May v. Anderson*, 345 U.S. 528, 533, 73 S. Ct. 840, 97 L. Ed. 1221 (1953); *Armstrong v. Manzo*, 380 U.S. 545, 549-50, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore a commanding one." *Lassiter*, 452 U.S. at 27.

13

Our own Supreme Court has recognized a parent's fundamental liberty interest in the relationship with his or her children: "We agree that the termination of parental rights is an extremely serious matter and may only be accomplished in a manner which assures maximum protection to all of the rights of the natural parents and of the child involved." *In re A.W.*, 241 Kan. 810, 814, 740 P.2d 82 (1987); see *In re B.D.-Y.*, 286 Kan. at 697-98. And another panel of our court recognized that "the private rights affected by governmental action are very significant and are entitled to the highest protection from unwarranted governmental action." *In re J.L.*, 20 Kan. App. 2d 665, 671, 891 P.2d 1125 (1995). That interest is at stake in parental termination proceedings. This factor thus weighs in Mother's favor.

2.      *The Risk of Erroneous Deprivation of the Interest Through the Procedures Used and the Probable Value of Additional or Substitute Procedural Safeguards*

For this next factor, the evident risk here is that Mother will be deprived of her fundamental rights as a parent without proper procedural protections. We will focus on the court's rulings regarding: the attorney's motion to withdraw; Mother's motion for a continuance and to seek new counsel; and the unexpected order that Mother must represent herself.

*An indigent parent's statutory right to counsel*

In understanding the procedural safeguards in place for parents in a CINC case, particularly a parental termination rights hearing, we must begin with the undeniable rule that an indigent parent in a CINC case has—at minimum—the statutory right to counsel. This right can be found under K.S.A. 38-2205(b)(1), which states in relevant part:

14

"(b) *Attorney for parent or custodian*. A parent of a child alleged or adjudged to be a child in need of care may be represented by an attorney, in connection with all proceedings under this code. At the first hearing in connection with proceedings under this code, the court shall distribute a pamphlet, designed by the court, to the parents of a child alleged or adjudged to be a child in need of care, to advise the parents of their rights in connection with all proceedings under this code.

(1) If at any stage of the proceedings a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent. . . .  A parent or custodian who is not a minor, a mentally ill person or a disabled person may waive counsel either in writing or on the record."

This statute makes clear that courts are required to appoint lawyers for indigent parents facing the termination of their parental rights.

*The court's ruling on Mother's motion for new counsel and the attorney's motion to withdraw*

The day before the termination hearing, Mother filed a "Motion of Ineffective Counsel," stating she feels "he's not representing me to his best of ability" and "He doesn't want to manage the case, how I want to" and "He fails to prioritize my case."

Later that same day, Mother's counsel responded by filing a motion to withdraw, stating that due to Mother's motion, which alleged "multiple violations of the Kansas Code of Professional Conduct," he should be allowed to withdraw. Our review of the record indicates that the district court did little to inquire about the nature of the alleged conflict between Mother and her attorney before allowing the attorney to withdraw and ordering Mother to represent herself. The court stated, "No. You are gonna listen to me for a little bit here because this is where we are with this. And I will give [your attorney] some choice in this, but I'm inclined to grant his motion, and you can represent yourself in this matter."

Mother's statements highlight her concerns that her attorney was not advocating on her behalf. She was expressing her dissatisfaction with her assigned counsel and asking for new counsel.

*The court's duty to adequately inquire about a parent's dissatisfaction with assigned counsel*

In a CINC appeal, we should look to the standards and procedures used in criminal cases when considering a parent's appellate challenge of the district court's denial of a motion for new counsel. See *In re C.D.A.*, No. 108,903, 2013 WL 3491303, at *5 (Kan. App. 2013) (unpublished opinion). We can find guidance from our review of criminal cases discussing what a defendant is required to show to warrant new counsel as well as a district court's duty to investigate a potential attorney/client conflict.

More profoundly, a criminal case and a CINC case both involve fundamental liberty interests and share in a heightened due process standard. Naturally, because of "the greater interests at stake," criminal cases have the highest standard of proof—beyond a reasonable doubt. *In re B.D.-Y.*, 286 Kan. at 691. Just as important, in a CINC case, "'the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money."'" 286 Kan. at 697 (quoting *Santosky*, 455 U.S. at 756). As shown in the required higher standards of proof, each involve the potential loss of a respective liberty interest. See *Santosky*, 455 U.S. at 753. Thus, the district court has a duty to inquire when it becomes aware of a potential attorney/client conflict, which may jeopardize the appointed attorney's ability to provide effective representation. As such, these cases can be useful and appropriately adapted to CINC proceedings.

*We should look at a court's method of inquiry outlined in criminal cases.*

To begin, in determining whether a court should appoint new counsel, a defendant "'must show "justifiable dissatisfaction" with his or her appointed counsel.'" See *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 (2015). The focus of a justifiable dissatisfaction inquiry is "'the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney.'" 302 Kan. at 761-62. As such, a party demonstrates "[j]ustifiable dissatisfaction" by showing "a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication" between client and counsel. 302 Kan. 747, Syl. ¶ 3. In making this determination, "the district court must conduct some sort of investigation." *State v. Sappington*, 285 Kan. 158, 169, 169 P.3d 1096 (2007).

Several cases suggest that the duty of investigation requires the district court to "fully" listen to the indigent party's complaints and appointed counsel's responses. See 285 Kan. at 169 (finding district court satisfied duty to investigate when it "fully" heard Sappington's complaints at motion hearing and at trial and "fully" heard his counsel's responses); *State v. Carter*, 284 Kan. 312, 323, 160 P.3d 457 (2007) (finding district court "made an adequate inquiry into" defendant's complaints about counsel, noting judge took more than 20 minutes outside presence of jury to address issues raised by defendant). From a court's inquiry, the court can form a reasonable basis for deciding whether counsel can properly defend the client or whether the relationship has deteriorated such that counsel cannot provide a proper presentation of a defense. *State v. Ferguson*, 254 Kan. 62, 70, 864 P.2d 693 (1993).

Gleaning from these cases, we can see how a district court should be able to efficiently inquire from the parent and parent's counsel. This can be done with either precise questioning of the parties or a "single, open-ended question by the trial court." *State v. Staten*, 304 Kan. 957, 972-73, 377 P.3d 427 (2016). This duty to investigate is

17

not demanding and, thus, should not be especially time consuming or burdensome. A more thorough inquiry was required here but did not occur. See 304 Kan. at 972-73.

As a result, our courts have found that a district court's failure to make a reasonable inquiry into a potential conflict of interest constitutes an abuse of discretion. See, e.g., *State v. Brown*, 300 Kan. 565, 577-78, 331 P.3d 797 (2014). In *State v. Simpson*, 29 Kan. App. 2d 862, 871-72, 32 P.3d 1226 (2001), another panel of this court found that a court's failure to give the defendant an adequate opportunity to explain the problems he perceived with his appointed counsel and to inquire into the alleged problems more fully was an abuse of discretion. And in *Brown*, the district court prevented the defendant from providing further information on the conflict "by demanding that he not speak while the judge gratuitously and strenuously opined on trial counsel's virtues." 300 Kan. at 576. That is similar to the facts here.

Finally, we can look at *In re C.D.A.* There, a mother asserted the district court violated her due process rights by denying her request for new counsel. Although the district court had been aware of a potential attorney/client conflict due to an alleged breakdown in communication, the district court did not investigate or conduct any inquiry. In its analysis on appeal, the panel considered criminal cases that explained a district court's duty to inquire of a potential attorney/client conflict and why a court should look into the possible deterioration of the attorney-client relationship. The panel held the district court abused its discretion by failing in its duty to inquire about the possible conflict between the mother and her attorney. 2013 WL 3491303, at *5-6.

*A court's duty to adequately inquire is heightened in a CINC case.*

These cases noted above serve—in part—as the initial guideline for properly ruling on a motion regarding possible termination of an attorney/parent relationship. Yet there is a second guideline to adhere to that is particular to a CINC case—conducting a

18

thorough inquiry to ensure that the case proceeds towards a timely resolution for the child. A parent's motion for new counsel or a claim of ineffectiveness can be reviewed for its validity or—as the district court stated here—as a delay tactic to postpone the termination hearing. This heightened scrutiny works in harmony with the Code's "expressed policy of disposing of proceedings without unnecessary delay." *In re N.A.C.*, 299 Kan. 1100, 1108, 329 P.3d 458 (2014); see K.S.A. 38-2201(b)(4).

Given the course of this case, the district court's frustration was understandable. Mother first filed a pro se motion requesting new counsel and asserted ineffective assistance of counsel. Mother's attorney moved to withdraw, citing a conflict, and the motion was granted without a hearing. As a result, the termination hearing was moved to January 30, 2023, and the court appointed a second attorney for Mother. Two weeks before the rescheduled termination hearing, the new attorney moved to withdraw, stating that Mother "persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent." The district court granted the withdrawal motion, again without a hearing. The district court appointed Mother her third attorney on January 30, 2023, and the termination hearing was eventually moved to May 18, 2023. The day before the scheduled hearing, Mother filed a "Motion of Ineffective Counsel."

In support of her motion for new counsel and a continuance, Mother suggested to the district court that she had reasons for being dissatisfied with her appointed attorney to support her continuance motion. She told the court that her counsel told her that he was "'stuck'" with representing her, supporting a finding that there was good cause to continue the hearing. The district court interrupted Mother's attempt to explain her complaints. The court then told Mother that she would represent herself.

At this point, the district court did not allow Mother to elaborate on the reasons she had for filing motions for ineffective assistance of counsel against two of her court-appointed attorneys. The district judge interrupted Mother and argued with her about

19

whether her attorneys had conflicts, instead of questioning Mother about her complaints about her counsel and seeing if they could be addressed. Here, it cannot be said that the court fully heard Mother's complaints or counsel's responses. Without hearing from Mother, the validity of her motion for new counsel and a continuance cannot be determined, nor can the assumption that Mother's motion was a delay tactic be ruled out.

Regarding the third attorney's motion to withdraw, the attorney did advise the district court that he had met with Mother earlier that morning to discuss her motion. After hearing her "complaints and allegations" against him, he advised the court that he was continuing with his motion to withdraw as Mother's counsel. While the court later asked Mother's counsel if he felt it was appropriate to withdraw, the court asked nothing further. The court did not directly question counsel about the conflict issue during this portion of the hearing. Rather, the district court asked the attorney if it was "still an issue" and later allowed the attorney to withdraw.

*Ensuring procedural due process is met in a CINC case*

What can be taken away from this opinion is that a deliberate and thorough inquiry is required in a CINC case when ruling upon a parent's motion for new counsel or an attorney's motion to withdraw. This safeguards both the parents' procedural due process while also striving towards disposing of the CINC case without "unnecessary delay." See K.S.A. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d 1247, 1251-52, 447 P.3d 994 (2019) ("This court has previously stressed the importance of the interest at stake and has *required a heightened scrutiny* into the process afforded to a parent in termination proceedings." [Emphasis added.]).

That is, by inquiring further, a court can determine whether the parent's specific concerns with counsel jeopardizes the parent's right to counsel and/or the counsel can explain if there is a conflict and/or a breakdown in communication, and whether steps

20

have been taken to address the parent's concerns. Hearing from each party can assist the court in deciding whether counsel can remain to represent a parent's best interests. Naturally, the court and counsel should "walk a delicate line," and the court must not require counsel to improperly disclose the parent's confidential communications. *Pfannenstiel*, 302 Kan. at 766.

For instance, in *State v. Bryant*, 285 Kan. 970, 179 P.3d 1122 (2008), the defendant, Bryant, filed a complaint against his attorney before he was sentenced. The district court pressed Bryant for a specific reason why his assigned counsel should not continue, stating: "'Well, unless you can give me something specific as to why she's not qualified to represent you in this sentencing, then she will proceed with the sentencing.'" 285 Kan. at 991. Bryant did not identify any specific reason. The court found that Bryant had "'told me absolutely nothing that rises to the level of a factual or legal basis to change counsel.'" 285 Kan. at 991. As a result, the court did not remove Bryant's counsel and proceeded to sentencing.

Thus, when faced with a parent's complaints about assigned counsel or counsel seeking to withdraw from the case due to a parent's allegations, a court should take the necessary time before ruling on the motion. This duty is not demanding as our courts have found that a "single, open-ended question by the trial court" may be sufficient if it provides the party "with the opportunity to explain a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel." *Staten*, 304 Kan. at 972-73.

*Continuances add procedural safeguards.*

Besides failing to investigate the potential conflict between Mother and her counsel, the district court would not consider a continuance. Of course, a court has substantial discretion in controlling the proceedings before it, which includes the

21

discretion to decide whether to grant a request for a continuance. See *In re Adoption of J.A.B.*, 26 Kan. App. 2d 959, 964, 997 P.2d 98 (2000).

*And yet*, the district court's discretion in whether to grant a continuance "is bound by due process requirements that interested parties be afforded an opportunity to present their objections, which includes a reasonable time to prepare a defense to the litigation. *In re H.C.*, 23 Kan. App. 2d at 961." *In re L.F.*, No. 124,157, 2022 WL 1122691, at *7 (Kan. App. 2022) (unpublished opinion). Parents are not guaranteed unlimited continuances in a child in need of care case. See 2022 WL 1122691, at *6-7. Additionally, continuances may be granted for good cause shown. K.S.A. 38-2246.

"In ruling on a motion for continuance . . . a court must consider all circumstances, particularly such matters as the applicant's good faith, his showing of diligence, and the timetable of the lawsuit." *In re J.A.H.*, 285 Kan. at 385; *Fouts v. Armstrong Commercial Laundry Distributing Co.*, 209 Kan. 59, 65, 495 P.2d 1390 (1972). The *Fouts* court viewed with "grave concern the denial of a continuance where the effect for all practical purposes deprives a party of his day in court." 209 Kan. at 65; see *In re J.A.H.*, 285 Kan. at 385.

After discussing Mother's motion, the district court ruled against a continuance, noting the prior continuances. The district court did not appear to believe Mother was acting in good faith. It stated, "[T]he Court sees this as what I believe to be an obvious technique to continue these matters effectively forever." Here, Mother's request for a continuance and new counsel the day before the termination hearing explains the court's concerns with the "timetable of CINC proceedings." *In re J.A.H.*, 285 Kan. at 386.

Mother, however, argues that she was acting in good faith when she moved for ineffective assistance of counsel. She wanted to obtain an attorney who would want to represent her. Because the district court did not investigate Mother's previous motions for

ineffective assistance of counsel, we cannot be sure that Mother did or did not have a good-faith basis for requesting new counsel.

Mother suggests that her appointed attorney was unprepared for her termination hearing. Later, after the State finished presenting its case, Mother told the district court that she had no witnesses to call on her behalf because her counsel had not subpoenaed any witnesses. As Mother was obviously unprepared to represent herself, this was another reason to grant the continuance—allowing her to work with new counsel. Prudently, the continuance could have been granted with the advisement to Mother that her motions alleging her counsel were ineffective would be closely scrutinized given her past claims against two prior attorneys.

*The court's unexpected order that Mother represent herself*

Additionally, the district court ordered Mother to proceed with the termination hearing without any counsel. This is contrary to K.S.A. 38-2205(b)(1), which instructs courts to appoint counsel for indigent parents:  "If at any stage of the proceedings a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent." It is also contrary to the specific requirement of a formal waiver if a parent chooses to waive his or her right to counsel contained in K.S.A. 38-2205(b)(1). This statute clarifies the two alternative actions that the parent must demonstrate should that parent elect to waive that right and represent him- or herself:  "[T]he right may be waived in writing or on the record and the parents and/or custodians can proceed pro se." *In re M.M.*, No. 126,539, 2024 WL 1954167, at *4 (Kan. App. 2024) (unpublished opinion); see K.S.A. 38-2205(b)(1).

As an additional procedural safeguard, under K.S.A. 38-2205(b), courts should "advise the parents of their rights in connection with all proceedings under this code." In this case, the district court did not advise Mother that she had a statutory right to counsel.

23

Moreover, when ordering Mother to proceed without counsel and represent herself, the district court itself did not acknowledge how "many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge." See *State v. Burden*, 311 Kan. 859, 864, 467 P.3d 495 (2020). Habitually, courts advise parents of the disadvantages they might face if proceeding pro se at a hearing. See, e.g., *In re J.A.H.*, 285 Kan. at 378.

Instead, as illustrated below, the court advised Mother to conduct her cross-examination of Dr. Hazel by simply asking questions "as they come into your head":

"THE COURT:  [D]id you want to ask the doctor questions?

"[MOTHER]:  This is the first time I've seen this report. I don't know how you expect me to even be able to go over or ask him anything based off his report when this is the first time I've ever even got to see this report.

"THE COURT:  Okay.

"[MOTHER]:  I mean, I don't see how that's even fair.

"THE COURT:  So do you have any questions for him? This is your opportunity.

"[MOTHER]:  Yeah, I do, but I don't know how to ask them.

"THE COURT:  You say you have questions. Then just ask them as they come into your head.

"[MOTHER]:  I don't see how that's gonna be fair at all."

The State's exhibit No. 1, Dr. Hazel's report, discussed Mother's psychological testing and parenting assessment. Ultimately, Mother declined to examine Dr. Hazel. Frustrated, Mother attempted to leave the courtroom after the State's first witness:

"THE COURT:  [Mother], where are you going?

"[MOTHER]:  I have to leave. I don't know how to do this. I don't know how to represent myself.

"THE COURT:  Okay. You are not leaving this courtroom.

"[MOTHER]:  I don't know how to do this. . . .

24

. . . .

"[MOTHER]:  I don't know what to do here to represent myself. I have no idea.

"THE COURT:  Well, we'll continue."

Without a continuance and with no voluntary waiver of counsel, Mother was continually left adrift without any assistance, contrary to K.S.A. 38-2205(b)(1). She had no formal legal education; she finished high school and later worked in construction. It remains unclear how she was supposed to prepare—in a moment's notice—for an evidentiary hearing at which her fundamental rights as a parent were at stake.

Mother's need for counsel was demonstrated throughout the hearing. For instance, during her cross-examination by the State, Mother simply answered the questions asked. An attorney would have been able to lodge the necessary objections to the opposing counsel's questions. Nor did she understand how and why she should have presented redirect testimony on her behalf. Essentially, there was no one advocating for Mother.

Without an attorney, Mother appeared defeated. At the end of the hearing, she offered no closing arguments. Instead, when the district court asked if she had "closing comments," she told the court:  "I don't think it matters what I'm gonna say, because people's minds have already made up, so, no." The court did not respond to Mother's statement but instead proceeded to its ruling and terminated her parental rights.

Our Kansas Supreme Court has recognized that a statutory right to counsel "is designed to safeguard parental rights." *In re J.A.H.*, 285 Kan. at 386. The purpose of appointing counsel is to provide the indigent parent a means towards achieving a fair hearing. See *In re Rushing*, 9 Kan. App. 2d 541, 547, 684 P.2d 445 (1984). Indeed, "this court has acknowledged that a parent in termination proceedings has the right to competent legal representation." *In re B.J.*, No. 125,727, 2023 WL 5320946, at *13 (Kan.

25

App. 2023) (unpublished opinion). Yet, as illustrated above, Mother was certainly unable to and could not participate in any meaningful way.

Overall, the denial of Mother's continuation motion without providing her with new counsel and ordering Mother to represent herself without notice or without the statutorily required waiver removed additional procedural safeguards. The probable value of additional procedural safeguards, particularly in a parental termination hearing, is high. Because the risk of erroneous deprivation under these circumstances is also high, this factor supports Mother.

3. *The State's Interest in the Procedure Used*

The State also has an interest. "[T]he Code must be liberally construed to, among other things, ensure that it 'will best serve the child's welfare and the best interests of the state.'" *In re J.A.H.*, 285 Kan. at 384; see K.S.A. 38-2201(b)(1). The Legislature clearly mandated that "[a]ll proceedings under this code [be disposed of] *without unnecessary delay*." (Emphasis added.) K.S.A. 38-2201(b)(4). "Part of protecting the children means ensuring that the children have some stability in their lives, which means cases need to be completed in a timely manner." *In re M.S.*, 56 Kan. App. 2d at 1254.

Nevertheless, when the State seeks to terminate the relationship between parents and their children, it must do so by fundamentally fair procedures that meet the requisites of due process. *Santosky*, 455 U.S. at 753. The government's interest is "in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail." *In re J.D.C.*, 284 Kan. at 166-67.

We disagree that the State's interest in concluding the termination hearing quickly was justifiable. Giving Mother time to work with new counsel would ensure her rights are upheld. The State's time preparing for the hearing was not considerable as the State's

26

case-in-chief only included two witnesses and three exhibits. It is understandable that district courts have frustration when they must appoint new court-appointed counsel. Still, under these unique circumstances, this factor weighs in Mother's favor.

*Balance test*

After analyzing all three *Mathews* factors, we find that Mother has met her burden of proving a due process violation. We find that when the district court denied Mother's motion to continue and appoint new counsel and ordered her to unexpectedly represent herself at the parental termination hearing, Mother was denied notice and the opportunity to be heard in a meaningful manner. We agree with Mother that the district court's rulings resulted in an unfair parental termination hearing and a violation of Mother's due process rights.

*Conclusion*

We reverse the termination of Mother's parental rights and remand with instructions for the district court to appoint Mother new counsel. With the understanding that the district court continues to have jurisdiction over all issues not specifically appealed, see K.S.A. 38-2273(f), the district court should set this case for a review hearing prior to reinstituting termination proceedings. The remaining issues are moot.

Reversed and remanded with directions.